Richard J. Singer et al., Plaintiffs *v.* William J. Sheppard, et al., Defendants.

Argued September 15, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt.

278

*David S. Shrager*, for plaintiffs.

*Gerald Gornish*, Deputy Attorney General, with him *Barbara A. Brown*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for defendants.

OPINION BY JUDGE BLATT, January 9, 1978:

This is a class action within our original jurisdiction[1] seeking a declaratory judgment on the constitutionality of the Pennsylvania No-fault Motor Vehicle Insurance Act[2] (No-fault Act). The plaintiff is Rich-

---

[1] Original jurisdiction of this matter is vested in this Court by reason of Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970; Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.401 (a)(1).

[2] Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

ard J. Singer, who brings the action individually and on behalf of all residents, taxpayers, pedestrians, motor vehicle owners and occupants of the Commonwealth of Pennsylvania. The defendants are various Commonwealth officials[3] charged with the administration and implementation of the No-fault Act. We are here concerned with the cross motions of the parties for judgment on the pleadings.

The No-fault Act was signed into law by the Governor on July 19, 1974 with a provision that all sections of the Act would be effective within twelve months.[4] The plaintiff initiated action in this Court in November 1974, seeking to enjoin the implementation and enforcement of the Act and petitioning for a declaratory judgment on its constitutionality. The Pennsylvania Supreme Court later assumed plenary jurisdiction[5] for the limited purpose of determining the constitutionality of Section 301(a)[6] of the Act, 40 P.S. §1009.301(a), and, while upholding the constitutionality of that section, it remanded the case to this Court for further action consistent with its opinion as filed. *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975). The count of the plaintiff's complaint sound-

---

[3] Named as defendants are the Insurance Commissioner, the Secretary of Health, the Secretary of Transportation, the Secretary of Labor and Industry, the Secretary of Revenue and the Attorney General.

[4] Section 701, 40 P.S. §1009.701, provides that all sections of the Act would take effect in twelve months, except subsection (a) of Section 504, 40 P.S. §1009.504(a), which would take effect immediately.

[5] Pursuant to Section 205 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.205.

[6] Section 301(a) significantly limits tort liability for injuries arising out of the maintenance or use of a motor vehicle with five listed exceptions. The provisions of Section 301(a) are expressly made inseverable by Section 503, 40 P.S. §1009.503.

ing in equity has become mooted by the passage of the Act's effective date. Remaining for disposition at this time, therefore, is the plaintiff's petition for a declaratory judgment on the constitutionality of various sections of the Act other than Section 301(a).

The No-fault Act was adopted by the Pennsylvania General Assembly in response to widely perceived deficiencies in the recovery of damages by victims of motor vehicle accidents who sought traditional tort remedies. Its stated purpose is "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims."[7] It implements this purpose by requiring that accident victims be paid benefits irrespective of fault through a compulsory first party insurance system in which the victim is usually paid for economic loss directly by his own insurance company or by the company insuring the owner of the vehicle. It significantly limits the availability of traditional tort remedies.[8] The plaintiff here maintains that the No-fault Act violates the due process and equal protection provisions of the Constitutions of the United States and Pennsylvania and also that the Act's title violates Article III, Section 3 of the Pennsylvania Constitution. The defendants raise preliminarily the issues of whether an action for declaratory judgment is an appropriate vehicle to raise the arguments of the plaintiff and secondly, if it is, whether the plaintiff has the standing required to maintain this action.

The defendants argue that a declaratory judgment is not appropriate here because the plaintiff's action

---

[7] Section 102(b), 40 P.S. §1009.102(b).

[8] *See* Section 301, 40 P.S. §1009.301, and *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975).

does not conform to the requirements of Section 6 of the Uniform Declaratory Judgments Act,[9] 12 P.S. §836. Section 6 provides in pertinent part:

Relief by declaratory judgment or decree may be granted in all civil cases where (1) an actual controversy exists between contending parties, or (2) where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation . . . and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding.

The defendants argue that there is no actual controversy present here between the contending parties and that there are no antagonistic claims present which indicate imminent and inevitable litigation. We disagree.

The stated purpose of the Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.[10] It is remedial legislation and is to be liberally construed and administered.[11] Section 2 of the Act, 12 P.S. §832, provides in pertinent part:

Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.

We believe that antagonistic claims clearly do exist between the parties here which, if left unresolved, would lead to imminent and inevitable litigation. We

---

[9] Act of June 18, 1923, P.L. 840, *as amended*, 12 P.S. §831 et seq.
[10] Section 12, 40 P.S. §842.
[11] *Id.*

also believe that the issues raised by the plaintiff here indicate that uncertainty and insecurity exist with respect to rights under the No-fault Act and that an expedient determination of these issues would be consonant with the clear and explicit legislative intent expressed in the Uniform Declaratory Judgments Act. We hold, therefore, that a declaratory judgment is appropriate in this case.

As to the standing required for the plaintiff to challenge the constitutionality of the No-fault Act, we note that Section 2 of the Declaratory Judgments Act provides, that "[a]ny person . . . whose rights, status, or other legal relations are affected by a . . . statute . . ." may obtain a declaration of his rights thereunder. In this case, we believe that the rights of the plaintiff and of the class of individuals represented by him are sufficiently affected by the provisions of the No-fault Act to provide standing for a challenge of its constitutionality.

The burden assumed by the plaintiff here, however, is a heavy one, for a statute is presumed to be constitutional and will not be declared otherwise unless it "clearly, palpably and plainly" violates the Constitutions of the Commonwealth or of the United States. *Singer v. Sheppard,* 464 Pa. 387, 393, 346 A.2d 897, 900 (1975); *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963). And the burden, of course, is on the party alleging the constitutional infirmity, with all doubts to be resolved in favor of sustaining the legislation. *Milk Control Commission v. Battista,* 413 Pa. 652, 659, 198 A.2d 840, 843 (1964).

The plaintiff argues initially that the No-fault Act is so vague in critical respects that the penal provisions and economic burdens imposed by it constitute a violation of due process of law. It is true that legislation can be so vague as to deny due process in its enforcement when it limits the ability of those to whom

the statute is directed to understand that which is prohibited or mandated. *Connally v. General Construction Co.,* 269 U.S. 385, 391 (1926); *Brown v. Commonwealth,* 453 Pa. 566, 571, 305 A.2d 868, 870 (1973). The plaintiff alleges that numerous sections of the Act[12] are so vague and inconsistent as to be impossible of execution and that the entire No-fault Act should, therefore, be declared unconstitutional. We believe, however, that, although the No-fault Act is admittedly complex and some of its provisions do appear to contain some ambiguities, complexity and possible ambiguity in themselves do not support a conclusion of unconstitutionality for reasons of vagueness.

The plaintiff has postured his argument here as to vagueness in terms of twelve hypothetical situations which allegedly illustrate the vagueness of each of the sections he attacks. We must, however, decline his request that we construe and apply these sections in the situations he posits. To do so would amount to construing them in a vacuum, and Declaratory Judgments are not to be employed for the determination of rights in anticipation of an event or events which may never occur or for the consideration of moot cases or as a medium for the rendition of advisory opinions. *In Re Johnson's Estate,* 403 Pa. 476, 488-89, 171 A.2d 518, 524 (1961). Our examination of these sections leads us to conclude that none are so vague or inconsistent on their face as to deny due process in their enforcement.[13] We believe, therefore, that judicial construction of these sections must await cases which properly present those questions.

---

[12] The plaintiff lists in his complaint the following Sections: 103, 104(d), 106(a)(3), 106(c), 108(a)(3), 108(c), 111(a)(4), 203(a)-(c), 207(a)(1), 207(a)(6), 208(b), 301(a)(2) and 301(a)(5).

[13] We also note that the asserted vagueness of these sections has not prevented the Insurance Department from promulgating regulations interpreting them. *See* 31 Pa. Code §66.1 et seq.

The plaintiff also asserts that Sections 203[14] and 206[15] of the No-fault Act, 40 P.S. §§1009.203, 1009.206,

---

[14] Section 203 provides:

(a) If benefits other than no-fault benefits are provided to an individual through a program, group, contract or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a victim or the survivor of a deceased victim injured as a result of an accident in the absence of no-fault benefits, then any reduction or savings in the direct or indirect cost to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit.

(b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expense, loss of income, work loss, replacement services loss and survivors loss. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

(c) An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security.

[15] Section 206 provides:

(a) General.—Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-

violate the equal protection clause of the Fourteenth Amendment by establishing a discriminatory classification among purchasers of no-fault policies. Section 203 provides that an individual insured by a no-fault policy who has voluntarily purchased collateral insurance protection may elect to designate that collateral insurance as the primary source of coverage required by the No-fault Act. Any insured who makes such an election is entitled by Section 203(c) to a reduction in the cost of his no-fault policy designed to "reflect the anticipated reduction in basic loss benefits payable by the insured by reason of the election of the owner or operator to provide substitute security. . . ." Section 206 provides that benefits for loss which are available to an accident victim from certain statutorily mandated sources[16] must be substituted before benefits are payable to the victim from a no-fault insurance policy. The No-fault Act does not provide for

required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them · excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

(b) Tax deduction.—If a benefit or advantage received to compensate for loss of income because of injury, whether from no-fault benefits or from any source of benefits or advantages subtracted under subsection (a) of this section, is not taxable income, the income tax saving that is attributable to such loss of income because of injury is subtracted in calculating net loss for work loss. Subtraction may not exceed twenty per cent (20%) of the loss of income and shall be in such lesser amount as the insurer reasonably determines is appropriate based on a lower value of the income tax advantage.

[16] Section 206 identifies these statutorily mandated collateral sources as all benefits and advantages received from workmen's compensation, social security (with some exceptions), any State-required temporary, nonoccupational disability insurance, and all

286

a reduction in the cost of no-fault insurance for individuals who are covered by these statutorily mandated collateral sources of protection.

The plaintiff contends that those two sections establish an unlawful classification of motor vehicle insurance premium payers. The first class consists of those who have voluntarily purchased collateral insurance protection and who have a right to exercise an option for a rate reduction in their insurance premiums. The second class consists of those who are the potential recipients of statutorily mandated benefits who are denied the rate reduction option given the other class. The plaintiff argues that this disparity in treatment is overly arbitrary, has no rational relationship to any statutory purpose and is therefore violative of equal protection requirements. A classification based on unequal treatment, however, is not in itself unconstitutional, and a classification created by a state statute does not violate the equal protection clause if it bears a rational relationship to a legitimate state interest or, when fundamental rights or a suspect class are involved, if it promotes a compelling state interest. *Gilman v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 630, 634, 369 A.2d 896, 897 (1977). The classification established here involves neither a fundamental right nor a suspect class, and our examination here, therefore, must turn on whether or not the classification at issue is patently arbitrary and, as a result, bears no rational relationship to a legitimate governmental interest. *Singer v. Sheppard, supra,* 464 Pa. at 402, 346 A.2d at 905.

Section 102 of the No-fault Act, 40 P.S. §1009.102, provides that the purpose of the legislation is to es-

other benefits (except life insurance proceeds) received by or available to an individual because of the injury from any government.

tablish a system of prompt and adequate basic loss benefits at reasonable cost to the purchaser of motor vehicle insurance. We believe that the classification at issue bears a rational relationship to the stated purpose of providing reasonably priced motor vehicle insurance and that the classification which is established in Sections 203 and 206 furthers this purpose by reducing the risks assumed by motor vehicle insurers when the insured has available a collateral source of the benefits required by the No-fault Act. The savings inherent in such risk reduction are presumably an integral factor in the calculation of the rate structure of motor vehicle insurers which will result in lower premiums for *all policy buyers.*

We do not find that the immediate rate reduction option offered voluntary purchasers of collateral insurance coverage by Section 203 is arbitrary or inconsistent with this purpose. The rate reduction option is clearly an inducement to no-fault policy buyers to purchase collateral insurance, and this incentive results in a further reduction in the risks assumed by insurers as more policy buyers take advantage of the option to lower their insurance premiums immediately and this should again gradually lead to a lowering of the cost of no-fault insurance *for all purchasers.* Moreover, we do not find it unreasonable that an immediate premium reduction is not offered to recipients of statutorily mandated benefits. Eligibility for such benefits is often predicated on factors which could not be predicted. Consequently, an immediate rate reduction in the amount specified by Section 203(c) of the No-fault Act could not be calculated for these individuals.[17] This classification may be imperfect, but

---

[17] For example, an employee injured in a motor vehicle accident who files a workmen's compensation claim would be required to establish, *inter alia,* that the injury was sustained in the course of his employment. *See e.g., North American Rockwell Corp. v.*

it is not unconstitutional. As noted by the United States Supreme Court in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813 (1976):

> It is well established, however, that a statutory classification impinging upon no fundamental interest, and especially one dealing only with economic matters, need not be drawn so as to fit with precision the legitimate purposes animating it. [Citation omitted.] That [a State] might have furthered its underlying purpose more artfully, more directly, or more completely, does not warrant a conclusion that the method it chose is unconstitutional. [Citation omitted.]

We must hold, therefore, that the classification among purchasers of no-fault insurance established by Sections 203 and 206 is not arbitrary and is rationally related to the No-fault Act's stated purpose of providing reasonably priced motor vehicle insurance.

The plaintiff argues finally that the No-fault Act is unconstitutional in that it violates Article III, Section 3 of the Pennsylvania Constitution because the body of the Act contains more than one subject not clearly expressed in its title.

Article III, Section 3 of the Pennsylvania Constitution provides:

> No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

The purpose of Article III, Section 3 is to provide full notice and publicity to all proposed legislative enactments and so prevent the passage of "sneak" legisla-

*Workmen's Compensation Appeal Board*, 21 Pa. Commonwealth Ct. 437, 346 A.2d 379 (1975).

tion. *Bensalem Township School District v. Bucks County Commissioners,* 8 Pa. Commonwealth Ct. 411, 419, 303 A.2d 258, 263-4 (1973). "[A]ll the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole." *Gumpert's Estate,* 343 Pa. 405, 407, 23 A.2d 479, 480 (1942). "[T]he title of an act need not, in order to comply with the constitutional requirement, be an index of its provisions or a synopsis of its contents; so long as it indicates the general subject to which all the provisions of the act are incidental or germane, it is sufficient [citations omitted]." *McSorley v. Fitzgerald,* 359 Pa. 264, 272, 59 A.2d 142, 146 (1948). The title of the No-fault Act is as follows:

> An Act providing for a compensation system for persons injured in motor vehicle accidents; requiring insurance for all motor vehicles required to be registered in Pennsylvania; defining compensable damage in motor vehicle accident cases; establishing an assigned claims plan; providing for arbitration; imposing powers and duties on courts, the Department of Transportation and the Insurance Commissioner; prohibiting certain discrimination; and providing penalties.

The plaintiff urges that the title is deficient because it fails to advise the reader adequately as to the following significant subject matter contained in the Act: the establishment of an emergency health services system for victims of motor vehicle accidents;[18] the creation of a rehabilitation program for such vic-

---

[18] Section 109(d), 40 P.S. §1009.109(d).

tims including review of medical services rendered thereunder;[19] the limitations of, and changes in the rights of subrogation, reimbursement and indemnity;[20] the exclusion of motorcycle occupants from recovery for basic loss benefits;[21] and the fact that motor vehicles operated in Pennsylvania are required to carry insurance.[22]

The No-fault Act broadly restructures many aspects of motor vehicle insurance in the Commonwealth and a broad and comprehensive statute of this kind necessarily contains many subjects which could properly be treated under different titles if the legislature so desired. If, however, the subjects treated in a single enactment are so interrelated that they are all germane to the general subject of the act, there is no violation of Article III, Section 3. *Bridgeford v. Groh,* 102 Pa. Superior Court 138, 146, 156 A. 612, 615 (1931),*aff'd,* 305 Pa. 554, 158 A. 260 (1932). We believe that the title of the No-fault Act clearly expresses its comprehensive nature and that the specific matters raised by the plaintiff, although not indexed in the title, are sufficiently suggested by the title to put an inquiring individual on notice of the general subject matter and the encompassing nature of the Act. We hold, therefore, that the title of the No-fault Act does not violate Article III, Section 3 of the Pennsylvania Constitution.

We conclude that the Pennsylvania No-fault Motor Vehicle Insurance Act does not deny due process or equal protection of the law and that its title does not violate the Pennsylvania Constitution. The motion of

---

[19] Sections 103, 407, 602, 40 P.S. §§1009.103, 1009.407, 1009.602.

[20] Section 111, 40 P.S. §1009.111.

[21] Section 103, 40 P.S. §1009.103, *but see* Section 301(a)(6), 40 P.S. §1009.301 (a)(6).

[22] Section 104(a), 40 P.S. §1009.104(a).

the defendants for judgment on the pleadings is therefore granted.

## ORDER

AND Now, this 9th day of January, 1978, the defendants' motion for judgment on the pleadings is hereby granted. The plaintiffs' complaint is hereby dismissed.