## Amatex Corporation v. Aetna Casualty and Surety Company

*William Bradbury* and *William P. Manning*, for petitioner.

*Richard K. Masterson, Michael Trachtman, John F. Naulty, Anthony Tinari, John R. Warner* and *Jonathan Wheeler*, for respondents.

VOGEL, *J.*, August 31, 1979—This action concerns a petition for declaratory judgment brought by Amatex Corporation (Amatex) on February 13, 1979, pursuant to the Declaratory Judgments Act, 42 Pa.C.S.A. §7531 et seq. Named as respondents are Amatex' two primary products liability insurers, Aetna Casualty & Surety Company (Aetna) and American Universal Insurance Company (American), as well as its excess liability insurance carriers, Bellefonte Insurance Company (Bellefonte), Stonewall Insurance Company (Stonewall), and Interstate Fire & Casualty Company (Interstate), each of whom issued policies of insurance to the petitioner for various periods of time from May 21, 1970, through the present.

The petition for declaratory judgment alleges that Amatex has been named as a defendant in 766 pending cases (as of January 31, 1979) in eleven states, including Pennsylvania, in which claimants allege that they or their decedents have suffered personal injuries or death as a result of exposure to asbestos products, including products man-

ufactured and sold by Amatex. The petition further alleges that the antagonistic and conflicting positions taken by its primary liability insurance carriers, Aetna and American:

". . . jeopardizes Petitioner's very existence and makes litigation between Petitioner and Respondents imminent and inevitable; a Declaratory Judgment is necessary to terminate the uncertainty and controversy presently prevailing with respect to the duties and obligations of all the Respondents under their several policies of insurance issued to Petitioner with respect to both indemnification and defense of your Petitioner in all pending lawsuits against Petitioner and all such actions which may be filed in the future."

The present situation regarding lawsuits which have been filed against Amatex is not entirely clear. It appears that Amatex is being defended by American, under a reservation of rights, in actions where the alleged discovery date is subsequent to May 21, 1976. However, according to Amatex, in an unspecified number of instances, no defense has been provided, such as in actions where only a summons is filed or where no manifestation or discovery date is alleged. Further clouding the controversy is the assertion by Amatex that there are no records of any insurance coverage prior to May 21, 1970.

The duties and obligations of Aetna (on the risk from May 21, 1970, to May 21, 1976) and American (on the risk from May 21, 1976, to May 21, 1979) are contained in the following provisions of the Aetna and American policies which contain nearly identical language:

"The company will pay on behalf of the *insured* all sums which the *insured* shall become legally

obligated to pay as damages because of
    Coverage A. *bodily injury* or
    Coverage B. *property damage*
to which this insurance applies, caused by an *oc-currence,* and the company shall have the right and duty to defend any suit against the *insured.* seeking damages on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. . . .
'*Bodily injury*' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom. . . .
'*Occurrence*' means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.* . . . ." (Emphasis in original.) (Excerpts from insurance policy between Amatex and American, effective May 21, 1976.)

The present controversy centers around the two conflicting theories of insurance coverage in asbestos related cases involving "occurrence" type policies similar to the policy in the case at bar. Injuries resulting from continued exposure to asbestos products (i.e., asbestosis, mesothelioma, cancer and respiratory disorders) have confounded the typical "occurrence" policy because of the difficulty in diagnosis and the long latency period. Proponents of the "exposure theory" contend that

the carrier on the risk when plaintiff was exposed to the product which caused the injury is responsible to defend and indemnify the insured. Since a plaintiff may be exposed to the asbestos product over a number of years, the theory is that the duty to defend and indemnity should be allocated among all carriers which were on the risk during the period of exposure, in proportion to the number of years a particular carrier was on the risk during the exposure period. The exposure theory was adopted in the case of Insurance Company of North America v. Forty-eight Insulations, Inc., 451 F. Supp. 1230 (E.D. Mich. 1978), and has allegedly been espoused by American in the case at bar. On the other hand, proponents of the "manifestation theory" contend that the carrier on the risk when the plaintiff's injury manifested itself or was actually discovered must provide coverage. The argument under this theory is that an injury or disease does not "occur" until functional impairment, such as tissue damage or lung disease, is noticeable. This view has been adopted in the case of Porter v. American Optical, Civil Action No. 75-2202 (E.D. La. entered November 23, 1977), and has allegedly been espoused by Aetna in the case at bar. Basically what Amatex is asking in this declaratory judgment proceeding is for this court to interpret the insurance contracts held with the various respondents and declare, once and for all, whether the insurer on the risk at the time any present or future plaintiff was exposed to the product or the insurer on the risk at the time any plaintiff's injury manifested itself, is obligated to provide coverage.

All defendants filed essentially similar preliminary objections to the petition for declaratory

judgment, which, in substance, requests this court to dismiss the petition for (1) failure to join indispensable parties, (2) lack of jurisdiction under the Declaratory Judgments Act, (3) lack of a justiciable controversy and (4) failure to set forth sufficient facts upon which the relief requested may be granted. Argument regarding these objections was heard before the court en banc on June 7, 1979.

Declaratory judgments were unknown at common law. Absent statutory authorization, courts would exercise their equitable jurisdiction and accept such actions only in certain circumstances, including suits to quiet or establish title, to construe trusts and wills, or upon an agreed statement of facts. Declaratory judgments were provided in Pennsylvania by the legislative adoption of the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq., which has been recently repealed by the Act of July 9, 1976, P.L. 586, eff. June 27, 1978. Whether or not a court should take jurisdiction of a declaratory judgment proceeding has always been a matter of sound judicial discretion, not a matter of right: Harleysville Mutual Insurance Co. v. Philadelphia Transportation Co., 435 Pa. 316, 320, 255 A. 2d 516 (1969).

The principles to guide the lower courts in determining whether or not a declaratory judgment proceeding should be entertained have been subject to continual change in the past two decades. The Supreme Court summarized in State Farm Mutual Automobile Insurance Co. v. Semple, 407 Pa. 572, 575, 180 A. 2d 925 (1962), what has become known as the McWilliams rule, as the principles were originally declared in McWilliams v. McCabe, 406 Pa. 644, 179 A. 2d 222 (1962), as follows:

"(1) that a declaratory judgment proceeding is not an optional substitute for established and available remedies; (2) that it should not be granted where a more appropriate remedy is available; (3) that it should not be granted unless compelling and unusual circumstances exist; (4) that it should not be granted where there is a dispute of facts, or such controversy may arise; and (5) that it should not be granted unless there is a clear manifestation that the declaration sought will be a practical help in terminating the controversy."

The McWilliams rule was expressly disavowed by the Supreme Court in Friestad v. Travelers Indemnity Co., 452 Pa. 417, 306 A. 2d 295 (1973), in which the court rejected the view that a declaratory judgment was an extraordinary legal remedy which would not lie if there existed another available remedy. A year later in Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 100, 318 A. 2d 906 (1974), the Supreme Court disavowed part four of the McWilliams rule, holding that "the mere existence of a factual question does not divest a court of discretion in permitting a declaratory judgment action." The remaining criteria to be used by the lower court in determining the appropriateness of a declaratory judgment action under the Uniform Declaratory Judgments Act, supra, according to the court, were contained in section 6 of the act, 12 P.S. §836, which provided in pertinent part:

"Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation,

or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding."

The legislature has again altered the standards to be employed in deciding whether or not a trial court, in its discretion, should entertain a declaratory judgment action. Since there has been no judicial review of the new Declaratory Judgments Act as of the date of this opinion, we are forced to interpret and apply the act without guidance from the appellate courts. The intent of the legislature in enacting the Declaratory Judgments Act must be construed in light of the Uniform Act and the Supreme Court decisions interpreting that act, since, as is stated in the official source notes, every section of the new Declaratory Judgments Act is either derived from, or a reenactment of, its predecessor, the Uniform Declaratory Judgments Act. Four substantive changes appear in the new act, only one of which has any bearing on this decision. The first of the alterations is contained in section 7537 of the new act which omits substantial portions of the language of section 6 of the Uniform Act discussed above. The effect of this change on the case at bar will be discussed below. The second alteration is contained in section 7539(a) of the new act, which, as the official source note indicates, is intended to codify Liberty Mutual, supra. The third alteration, also a codification of a Supreme Court decision, is

section 7541(b), which, as the official source note to section 7537 indicates, is intended to codify Friestad, supra, except with respect to special statutory remedies. The last alteration is the addition of section 7541(b), which contains various exceptions to the availability of declaratory relief, not applicable to this proceeding.

Section 7537 of the new act provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding, but as provided in section 7541(b) (relating to effect of alternative remedy), the existence of an alternative remedy shall not be a ground for the refusal to proceed under this subchapter."

A comparison of this language with section 6 of the Uniform Act, is indicative of a legislative intent to replace the old standard requiring either (1) an actual controversy between contending parties or (2) the presence of antagonistic claims between the parties involved which indicate imminent and inevitable litigation along with proof to the court's satisfaction that a declaratory judgment would serve to terminate the uncertainty or controversy giving rise to the proceeding (see Singer v. Sheppard, 33 Pa. Commonwealth Ct. 276, 281, 381 A. 2d 1007 (1978)), with a new standard enabling the trial court to dismiss a declaratory judgment action only where it finds that any such judgment would not terminate the underlying controversy between the parties.

A pivotal issue for our determination is whether or not this court may entertain the present action under the new Declaratory Judgments Act, 42

Pa.C.S.A. §7531 et seq., in the absence of the underlying tort claimants. This requires a construction of section 7540(a) which provides, in pertinent part, that: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Section 7540, including the language quoted above, is a reenactment of the prior provision of the Uniform Declaratory Judgments Act, regarding parties to actions for declaratory relief: 12 P.S. §841. As the Pennsylvania Supreme Court has held that under the Uniform Declaratory Judgments Act the claimant is a necessary party who must be joined in a declaratory judgment proceeding to determine insurance coverage, Insurance Company of the State of Pennsylvania v. Lumbermens Mutual Casualty Company, 405 Pa. 613, 177 A. 2d 94 (1962), and Keystone Insurance Company v. Warehousing and Equipment Corporation, 402 Pa. 318, 324, 165 A. 2d 608 (1960), we must sustain defendants' motion to strike for failure to join an indispensable party and dismiss the declaratory judgment action. The Commonwealth Court summarized the Supreme Court position in a recent case by stating:

"Our Supreme Court has consistently held that where claims are asserted against an insured, the persons asserting the claims are indispensable parties in a declaratory judgment action on the issue of coverage between the insured and the insurance carrier. [Footnote to citations.] The failure to join a claimant whose interests would be affected has been held to be fatal error." Township of Pleasant v. Erie Insurance Exchange, 22 Pa. Commonwealth Ct. 307, 311, 348 A. 2d 477 (1975).

Petitioner alleges that joinder of the over one thousand affected claimants is not only impossible, but that the resolution of the controversy as to which carrier must provide coverage has no practical or legal effect on the rights of the underlying claimants, since the only question is which carrier will defend petitioner, not whether coverage will be denied altogether. Petitioner contends that these factors distinguish the case at bar from the above precedents and urges the court to liberally construe the provisions of the new act to allow a declaratory judgment action to proceed where joinder of the underlying claimants is not feasible. As support for this construction, the petitioner cites Federal district court cases which have held that under the Federal Declaratory Judgments Act of June 25, 1948, 62 Stat. 964, as amended, 28 U.S.C.A. §§2201 and 2202, underlying claimants in an action between an insured and its insurer are proper, but not necessary or indispensable parties, to the action where the injured persons' non-joinder would oust the court of jurisdiction: Federal Ins. Co. v. Michigan Mutual Liability Co., 166 F. Supp. 537 (E.D. Pa. 1958); Hoosier Cas. Co. of Indianapolis v. Fox, 102 F. Supp. 214 (N.D. Iowa 1952). However, it should be noted that the Federal act does not contain the mandatory language regarding parties with an interest as does section 7540(a) of the Pennsylvania act; in fact it contains no provision as to parties. The position of petitioner would be tenable had the new act added the words "where feasible" to the language of section 7540, as some courts have implied in the Federal Declaratory Judgments Act. In any event, since the language quoted above from the new Pennsylvania act is identical to the previous act, we are bound by the

interpretation of the appellate courts on the question of whether a claimant in a declaratory judgment action on the issue of coverage between the insured and the insurance carrier are indispensable parties. As we find the decisions of the Commonwealth Court in Township of Pleasant, supra, and the Supreme Court in Keystone Insurance Company, supra, indistinguishable from the case at bar and thus determinative of this issue, we have no option but to grant respondents' motion to dismiss for failure to join indispensable parties.

An additional issue is whether or not the action, as presently constituted, is a request for an advisory opinion. Judgments that are merely advisory have been held to be not within the contemplation of the Uniform Declaratory Judgments Act, see Packel v. Takiff, 457 Pa. 14, 17, 321 A. 2d 649 (1974), and cases cited therein, and are also, we must assume, not within the contemplation of the new Declaratory Judgments Act. Indeed, had the design of the legislature in enacting the Declaratory Judgments Act been to obtain purely advisory judgments, a function not contemplated by our organic law, the act would be unconstitutional. See Reese v. Adamson, 297 Pa. 13, 17, 146 Atl. 518 (1929). Pennsylvania courts have repeatedly stated that a declaratory judgment must not be employed for the determination of rights in anticipation of an event or events which may occur, or for the consideration of moot cases or as a medium for the rendition of advisory opinions: Packel v. Takiff, supra, at 16-17; Johnson Estate, 403 Pa. 476, 488-89, 171 A. 2d 518 (1961). A request for an advisory opinion is one which seeks merely legal advice, and not the adjudication of an actual controversy, thus disclosing a state of affairs that does not permit of a declaratory judgment:

Shoenbrun v. Nettrour, 360 Pa. 474, 476, 61 A. 2d 868 (1948). It has been said that an advisory opinion is merely the giving of advice; it is not binding, while a declaratory judgment is a final judgment and constitutes res judicata: Kariher's Petition (No. 1), 284 Pa. 455, 467, 131 Atl. 265 (1925). Jurisdiction will never be assumed unless the tribunal appealed to is satisfied that ". . . an actual controversy, or the ripening seeds of one, exists between parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy. . . ." Id., at 471.

In Singer v. Sheppard, supra, the Commonwealth Court dismissed a challenge to the constitutionality of the Pennsylvania No-fault Motor Vehicle Insurance Act by way of a declaratory judgment. The plaintiff utilized twelve hypothetical situations to illustrate his contention that various sections of the act were unconstitutionally vague. The court declined to construe the sections "in a vacuum," deeming it more appropriate to "await cases which properly present those questions." Id., at 283. We are faced with a similar situation in the case at bar. Plaintiff has presented the court with a realistic grievance, one which we hesitate to leave unredressed. However, we are asked to construe the insurance contracts in question without regard to an individual claimant and determine whether the carrier on the risk at the time any claimant was exposed to the plaintiff's product, or the carrier on the risk at the time a claimant's injuries became manifested, is liable to defend and indemnify the plaintiff. Unless an individual claimant, injured at a particular place and time and manifesting those injuries at a particular place and time, comes be-

fore this court seeking damages from petitioner, and we also have before us a denial by respondents to defend and indemnify petitioner, we are unable to render other than an advisory judgment. Whatever our view may be as to the appropriate resolution of this legal issue, we refuse to impose that judgment on the entire nation in the absence of a suit by an individual claimant. We believe that the present request does not involve the requisite case or controversy envisioned by the legislature in enacting the Declaratory Judgments Act.

In dismissing this action, we are not unaware of the practical impossibility of requiring the petitioner to join every claimant in order to satisfy the mandates of the Declaratory Judgments Act, nor of the inevitable result that the issue of coverage between an insured and his insurer cannot be determined via declaratory judgment actions in Pennsylvania courts in the absence of the claimant, where claimants are either too numerous, or are not subject to service of process in the state. We do not believe, however, that this seemingly inequitable conclusion precludes the petitioners of any effective remedy.

The message from the legislature and the courts in the Commonwealth of Pennsylvania is that declaratory judgment actions should not be entertained where those affected by the decision are denied input into that decision. Should the petitioner raise the issue of coverage in a forum appropriate for determination of the issues, i.e., in an action where a claimant was involved, either as a party to a declaratory judgment action or as a plaintiff in a civil suit, the above policy would be satisfied. Thus a poignant argument could be made that the issue of coverage under the insurance contract so deter-

mined would have collateral estoppel effect between the insured and the insurer in subsequent cases where that same issue of coverage is raised: Safeguard Mutual Ins. Co. v. Williams, 463 Pa. 567, 345 A. 2d 664 (1975); Thompson v. Karastan Rug Mills, 228 Pa. Superior Ct. 260, 323 A. 2d 341 (1974).

In conclusion, in the absence of any of the tort claimants, the present petition may not be maintained under the Declaratory Judgments Act because:

1. Petitioner has failed to join indispensable parties, namely the individual plaintiffs in actions based upon exposure to asbestos products manufactured and sold by petitioner.

2. The court lacks jurisdiction under the Declaratory Judgments Act of 1978 to decide the question of insurance coverage between petitioner and respondents, in the absence of any of the above mentioned plaintiffs.

3. The court lacks subject matter jurisdiction in a declaratory judgment action in that the petition constitutes a request for an advisory opinion, a nonjusticiable controversy.

Accordingly, the following five orders accompanying this opinion are appropriate.

## ORDER

And now, August 31, 1979, after oral argument before the court en banc on June 7, 1979, in consideration of the briefs of counsel, and based upon our opinion of August 31, 1979, the preliminary objections of respondent, Aetna Casualty & Surety Company of March 28, 1979, in the nature of a

demurrer are granted and the petition for declaratory judgment of petitioner, Amatex Corporation of February 13, 1979 is respectfully dismissed.