583 A.2d 844

**PENNSYLVANIA CHIROPRACTIC FEDERATION, George R. Coder, D.C., Chairman of the Board, Pennsylvania Chiropractic Federation, Patrick A. Good, D.C., President, Pennsylvania Chiropractic Federation et al., Petitioners,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1990.

Decided Dec. 5, 1990.

466

468

Gregory R. Neuhauser, with him, Kevin J. McKeon, Malatesta, Hawke & McKeon, Harrisburg, for petitioners.

Richard J. Enterline, Asst. Counsel, with him, Victoria A. Reider, Deputy Chief Counsel, and Linda J. Wells, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, KELLEY and BYER, JJ.

PALLADINO, Judge.

Presently before this court are the preliminary objections (P.O.'s) of the Insurance Commissioner (Commissioner) to the petition for review (Petition) of the Pennsylvania Chiropractic Federation, three licensed chiropractors and Peter

Hickok, a chiropractic patient (Hickok), (collectively, Petitioners) filed in our original jurisdiction.

The Petition is in the nature of a complaint in equity for declaratory and injunctive relief, and contains the following general allegation. The Act of February 7, 1990, P.L. 11 (Act 6) impacts upon Petitioners by amending Section 1797 of the Motor Vehicle Financial Responsibility Law (Law), 75 Pa.C.S. § 1797. The relevant part of amended section 1797 provides as follows:

> **(a) General rule.—** A person or institution, providing . . . [medical services] to an injured person for an injury covered by . . . [automobile insurance] . . . shall not require . . . payment for the [services] in excess of 110% [of the Medicare reimbursement allowances]; . . . or the provider's usual and customary charge, whichever is less. The General Assembly finds that the [Medicare reimbursement allowances] . . . are an appropriate basis to calculate payment for [medical services] for injuries covered by [automobile insurance]. . . . If acute care is provided in an acute care facility to a patient with an immediate life-threatening or urgent injury by a Level I or Level II trauma center . . . or a major burn injury patient by a burn facility . . ., the amount of the payment may not exceed the usual and customary charge. Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.
>
> **(b) Peer review plan for challenges to reasonableness and necessity of treatment.—**
>
> > **(1) Peer review plan.—** Insurers shall contract jointly or separately with any peer review organization [PRO] established for the purpose of evaluating [medical services] provided to injured persons. Such evaluation shall be for the purpose of confirming that such [servic-

es] conform to the professional standards of performance and are medically necessary.

. . . .

**(5) PRO determinations in favor of provider or insured.—** If a PRO determines that [medical services] were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.

. . . .

**(7) Determinations in favor of insurer.—** If it is determined by a PRO ... that a provider has provided unnecessary [medical services] or that future [medical services] will be unnecessary, or both, the provider may not collect payment for the medically unnecessary [services]. If the provider has collected such payments, it must return the amount paid plus interest at 12% per year within 30 days. In no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the [services].

Thereafter, the Petition states six counts for relief, which we summarize as follows:

(1) That Act 6 violates the single subject requirement of Article III, Section 3 of the Constitution of Pennsylvania;

(2) That Act 6 unconstitutionally delegates authority to Peer Review Organizations (PRO's);

(3) That the ban on direct billing and the caps on medical service charges within Act 6 violate Petitioners' due process rights because they are not rationally related to the goal of reducing the cost of insurance;

(4) That Act 6 violates Petitioners' equal protection rights because it distinguishes between providers generally and acute care and burn facilities without a rational or reasonable basis;

(5) That Act 6 violates Petitioners' due process rights because its limitations, prohibitions and methodology for

payment are not stated with a reasonable degree of clarity; and

(6) That Act 6 violates Petitioners' equal protection and due process rights because, without a rational or reasonable basis, it distinguishes between providers and insurers by setting a 30 day time limitation for providers to return overpayments without setting a time limitation for insurers to pay withheld treatment charges.

The Petition prays this court to declare the relevant portions of Act 6 unconstitutional and to enjoin its enforcement.

The Commissioner filed P.O.'s to the Petition raising the following issues for our consideration: (1) whether, as to count 1 of the Petition, Petitioners failed to state a violation of the single subject requirement; (2) whether, as to counts 2 through 6, Petitioners failed to state equal protection and due process violations because there is a lack of state action; (3) whether, as to counts 2, 3, 5 and 6, Petitioners failed to state a violation of due process because they have no protected properly interest; (4) whether, as to count 2, Petitioners failed to state a violation of either Article II, Section 1 or due process because of the delegation of authority to PRO's; (5) whether, as to all the counts, Petitioners failed to state a "case or controversy" as required for declaratory relief; (6) whether, as to all the counts, Petitioners failed to state a cause of action because the challenged provisions of Act 6 are rationally related to a legitimate state interest; (7) whether Petitioner Peter Hickok lacks standing as to all the counts; (8) whether Petitioners lack standing as to the equal protection claim of count 4; and (9) whether Petitioners' complaint must be dismissed for failure to join indispensable parties.

■■■ As to the first issue, the Commissioner's preliminary objection is in the nature of a demurrer. When ruling on a demurrer, this court must accept as true all well-pleaded allegations in the complaint and all inferences reasonably deduced therefrom. *Pennsylvania Medical Providers Association v. Foster,* 136 Pa.Commonwealth Ct. 232, 582

A.2d 888 (1990) *(PMPA)*. We will sustain a demurrer only when it appears with a certainty that the law permits no recovery if the facts are as pleaded. *Id.*

Petitioners contend that Act 6 contains a number of unrelated subjects [1] in violation of Article III, Section 3 of the Pennsylvania Constitution, which states:

### § 3. Form of bills

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or part thereof.

The Commissioner asserts that all the provisions of Act 6 relate to insurance and that Act 6 constitutes a comprehensive effort to attack the roots and problems in automobile insurance.

The purpose of Article III, Section 3 is to provide full notice and publicity to all proposed legislative enactments and to prevent the passage of "sneak" legislation. *Singer v. Sheppard,* 33 Pa.Commonwealth Ct. 276, 381 A.2d 1007 (1978). In *Singer,* this court dismissed a challenge to the now repealed Pennsylvania No-fault Motor Vehicle Insurance Act,[2] which broadly restructured many aspects of motor vehicle insurance in the Commonwealth and necessarily contained many subjects. However, because the many subjects were all germane to the general subject of the act, there was no violation of Article III, Section 3. *Id.,* 33 Pa.Commonwealth at 290, 381 A.2d at 1013.

1. These subjects include: racketeering and corrupt organizations; motor vehicle insurance fraud; certification of pleadings, motions and other papers; special damages in actions arising under insurance policies; procedures for applications for registration of motor vehicles; providing for certain safety and anti-theft devices to require premium discounts in motor vehicle insurance policies; and various amendments to the Motor Vehicle Code in the areas of operation of vehicles, fees for reinstatement of licenses and studies to be conducted upon insurance policies issued to motorists in cities of the first class. Petition at 7–8.

2. Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–1009.701, repealed by Section 8(a) of the Act of February 12, 1984, P.L. 26.

■■■ In the present case, although Petitioners allege that the subjects of Act 6 are not germane to a single subject, this court can review the content of Act 6 and decide as a matter of law whether the contents are germane to a single subject. Act 6 contains amendments to the Crimes Code, Judicial Code, and Vehicle Code, and we note that these amendments are all related to the single purpose of restructuring the regulation of motor vehicle insurance in the Commonwealth and reducing the cost of insurance to policy holders. This single purpose is clear from the title of Act 6 and from a reading of the text, obviating any concern that the Act contains "sneak" legislation. Accordingly, we sustain the Commissioner's preliminary objection that Petitioners failed to state a violation of Article III, Section 3.

■■■ As to the second issue, the Commissioner asserts that the Petition raises due process and equal protection objections to the conduct of PRO's under Act 6. The Commissioner contends that PRO's are private entities and that their actions do not constitute state actions. Consequently, the PRO's actions are not subject to constitutional due process and equal protection constraints.

Petitioners allege that Section 1797 violates their due process and equal protection rights. The Commissioner has the obligation to implement this section. Obviously, the Commissioner is a state actor subject to due process and equal protection constraints. The Commissioner's P.O. asserting a lack of state action is overruled.

■■■ As to the third issue, the Commissioner asserts that Petitioners, who represent medical service providers and a medical service recipient, have no property interest affected by Section 1797. The Commissioner argues that the providers can treat whomever they choose and can avoid the Section 1797 requirements by not treating patients whose services are to be paid for by automobile insurers. Without a protected property interest, the Commissioner contends that the Petitioners have failed to state a necessary element of their due process and equal protection claims.

In *PMPA*, this court recently addressed a similar preliminary objection to Section 1797. We stated:

[W]hat petitioners complain of is the unreasonable regulation of doctor/patient relationships under Act 6. "[T]he right to practice one's chosen profession free from *unreasonable* governmental interference falls within the 'liberty' and 'property' concepts of the fifth and fourteenth amendments." *Meier v. Anderson,* 629 [692] F.Supp. 546, 551–52, (1988), *aff'd,* 869 F.2d 590 (1989) (emphasis in original).

*Id.,* 136 Pa.Commonwealth Ct. at 242, 582 A.2d at 893. The present Petition also alleges an unreasonable regulation of doctor/patient relationships. The Commissioner's P.O. does not dispute the presence of such a relationship or that the relationship does not create a protected property interest. The Commissioner's argument is basically that the effect on any property interest is inconsequential because doctors can choose not to provide treatment which will be paid for by automobile insurers.

The Petition alleges that the three licensed chiropractors, who are Petitioners, provide medical treatment to patients injured in motor vehicle accidents. It is reasonable for this court to presume that some of the services provided to these patients will be paid for by automobile insurers. Thus, we are satisfied that Act 6 will have some impact on existing doctor/patient relationships, which is a protected interest. The Commissioner's argument as to whether an individual doctor can avoid the impact of Act 6 by turning away patients is immaterial. Accordingly, the Commissioner's P.O. asserting a lack of a protected property interest is overruled.

■ As to the fourth issue, addressing the constitutionality of the delegation of authority, Act 6 delegates to PRO's [3] the authority to evaluate medical services provided

3. Section 7 of Act 6, 75 Pa. C.S. § 1702, defines "PRO" as follows:
Any Peer Review Organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services, or any

to injured persons for the purpose of confirming that such services "conform to the professional standards of performance and are medically necessary." 75 Pa.C.S. § 1797(b)(1). If a PRO decides that a service was unnecessary, Act 6 prohibits the provider from collecting payment for the service. 75 Pa.C.S. § 1797(b)(7).

Petitioners allege that these provisions violate Article II, Section 1 of the Pennsylvania Constitution[4] because they delegate legislative authority to the PRO's, which are non-governmental private entities. Petitioners also allege that the delegation violates their constitutional right to due process because the PRO's decisions are not subject to judicial review.

The Commissioner argues that Petitioners have failed to state a violation of Article II, Section 1 because the authority delegated to the PRO's does not constitute legislative power. In support of this argument, the Commissioner cites *Marshall Impeachment Case*, 363 Pa. 326, 69 A.2d 619 (1950); and *Blackwell v. State Ethics Commission*, 523 Pa. 347, 567 A.2d 630 (1989).

In *Marshall*, the supreme court stated that Article II, Section 1 "legislative power" is the power "to make, alter, and repeal laws." *Marshall*, 363 Pa. at 337, 69 A.2d at 626. While the legislature cannot delegate this power, it can delegate the "power to determine some fact of state of things upon which the law makes, or intends to make, its own action depend." *Id.* In *Blackwell*, the supreme court added that the "prohibition against delegation of 'legislative power' requires that the *basic policy choices* be made by

> health care review company, approved by the commissioner, that engages in peer review for the purposes of determining that medical and rehabilitation services are medically necessary and economically provided. The membership of any PRO utilized in connection with this chapter shall include representation from the professional whose services are subject to review.

4. This section provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

the General Assembly." *Blackwell,* 523 Pa. at 360, 567 A.2d at 637 (emphasis in original).

The Petition does not contain any allegation that the power delegated to PRO's constitutes the power to make, alter, or repeal laws or to make basic policy. Section 1797(b) merely authorizes the PRO's to make one factual decision, whether a service provided was or is medically necessary according to professional medical standards. The PRO's decision is merely a fact-finding vehicle by which the General Assembly has implemented its own policy decision to insulate insurers from paying for unnecessary medical services. Consequently, Petitioners do not state a claim that Section 1797(b) violates Article II, Section 1.

As to the due process challenge to the delegation, the Commissioner concedes that Act 6 does not expressly provide for judicial review of PRO decisions. The Commissioner asserts that the PRO decision is an "arbitration-like" proceeding and that parties in such proceedings are not entitled to judicial review. Alternatively, if this court concludes that due process requires judicial review of the PRO decisions, the Commissioner contends that this court can construe Act 6 as allowing judicial review by applying the principle of construction that statutes are to be construed so as to avoid unconstitutional results.

Petitioners contend that Act 6 authorizes PRO's to determine that medical services were unnecessary and prohibit a medical-service provider from collecting payment for the services.[5] Petitioners assert that this prohibition deprives medical-service providers of an independent forum in which to test their claim for reimbursement, thereby denying them due process.

The Commissioner contends that due process does not require the provision of judicial review and cites *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). In *Washington Arbitration Case,* the parties submitted to

---

5. In the interest of clarity, we note that the PRO is not delegated the authority to decide whether a charge for services is reasonable.

binding interest arbitration under the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10 (Act 111). The arbitrator issued an award containing a provision as to a health care benefit, which was challenged by the city on appeal to a trial court. The trial court concluded that the city had no right to appeal.

On appeal, the supreme court held that the trial court had no jurisdiction to hear the case because the statute authorizing arbitration specifically prohibited an appeal therefrom to any court. In so holding, the supreme court concluded that it "has long recognized that the Legislature has the right to preclude appeals." *Washington Arbitration Case,* 436 Pa. at 172, 259 A.2d at 439–440. The supreme court held that the preclusion of appeal does not harm a parties' constitutional right to due process, stating "every decision making tribunal is required to conduct its affairs in accordance with the mandates of due process, and we will not indulge in the presumption that the likelihood of a due process or other constitutional violation is significantly greater in a tribunal such as an arbitration panel than it is in an appellate court." *Id.,* 436 Pa. at 173, 259 A.2d at 440.

*Washington Arbitration Case* is not applicable to the present case. A PRO is similar to an arbitration panel in that it is neither a court of record nor an administrative agency. However, a PRO is significantly dissimilar from an arbitration panel in that the latter is selected by both parties at the time the dispute arises [6] and the former is a body established by a state or local professional society [7] and selected solely by the insurer before the dispute arises.

■■■ Additionally, *Washington Arbitration Case,* the supreme court concluded that the statutory preclusion of the right to appeal did not violate due process because the parties could still receive review in the nature of narrow

6. *See* Section 4 of Act 111, 43 P.S. § 217.4(b).

7. *See* Section 2 of the Peer Review Protection Act, Act of July 20, 1974, P.L. 564, *as amended,* 63 P.S. § 425.2

certiorari.[8] Because PRO review is substantially different from the proceeding in *City of Washington,* we conclude that Commissioner has failed to clearly establish that Petitioners have no right to judicial review of PRO decisions.

In her argument in the alternative, the Commissioner asserts that this court should construe Act 6 as permitting judicial review of PRO decisions because such review is not expressly prohibited. The Commissioner argues that if due process requires an appeal, then to avoid an unconstitutional result we should construe Act 6 as implicitly permitting such an appeal.

We have already concluded that it has not been established with a sufficient degree of certainty what Petitioners' due process rights require in the present context. Accordingly, it would be premature at this point to impose any constitutionally based construction upon this section of Act 6. The Commissioner's demurrer to the due process challenge to the delegation of authority is overruled.

As to the fifth issue, that there is no "case in controversy", the Commissioner asserts that any complaints the Petitioners may have are not against her but against insurers who might challenge fees under section 1797(b). The Commissioner contends that because the Petition does not state a controversy against her, the Petitioners have failed to state a claim for declaratory relief.

 The Declaratory Judgment Act[9] requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named defendant. *Singer v. Sheppard,* 33 Pa.Commonwealth Ct. at 282, 381 A.2d at 1010. The petitioner whose rights, status, or other legal

8. In *Washington Arbitration Case,* review was provided under former Supreme Court Rule 68½, which has since been repealed. Narrow certiorari review is nonetheless available for Act 111 arbitration awards. *Appeal of Upper Providence,* 514 Pa. 501, 526 A.2d 315 (1987). Similarly, judicial review is provided for common law arbitration and non-Act 111 arbitration under the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320.

9. 42 Pa.C.S. §§ 7531–7541.

relations are affected by a statute may seek declaratory relief.[10]

In *Singer*, the petitioners (residents, taxpayers, pedestrians, motor vehicle owners and occupants of this Commonwealth) stated an actual controversy against the Insurance Commissioner based on the "uncertainty and insecurity with respect to rights, status, and other legal relations" which were affected by the passage of the Pennsylvania No-fault Motor Vehicle Insurance Act. In the present case, the Petition seeks a declaration as to their rights and relation affected by Act 6. In *Singer* as in the present case, the Commissioner has the statutory duty to implement the provisions of the challenged statute. The Commissioner and the Petitioners obviously disagree as to the impact and constitutionality of Section 1797 on Petitioners' rights, status and legal relations. This is sufficient to establish an actual controversy between the parties. Accordingly, the P.O. asserting a lack of an actual controversy is overruled.

As to the sixth issue, the Commissioner argues that Act 6 does not violate due process or equal protection rights. The Commissioner merely contradicts the allegations of the Petition, that the provisions and alleged disparate treatment of Section 1797 are not related to valid governmental purposes. We are constrained to accept as true the allegations of the Petition and accordingly overrule this objection.

As to the seventh issue, whether Petitioner Hickok lacks standing, the Commissioner contends that there are insufficient facts to support a conclusion that he is affected by the implementation of Section 1797. The Petitioners allege that Hickok "has been a chiropractic patient for approximately six (6) years and continues to seek chiropractic treatment from a provider affected by the Act." Petition at 3—4. The Petition does not allege that Hickok was injured in an automobile accident or that his medical services are paid for by an automobile insurer. The Peti-

10. Section 2 of the Declaratory Judgment Act, 42 Pa.C.S. § 7533.

tion also fails to allege that Hickok is directly affected by Act 6, but merely that his provider is affected by Act 6.

■ To have standing, a party must plead facts which establish a direct, immediate and substantial injury. *Paratransit Association of Delaware Valley, Inc. v. Yerusalim*, 114 Pa.Commonwealth Ct. 279, 538 A.2d 651 (1988). The Petition does not allege expressly or by necessary implication that Hickok is directly, immediately, or substantially affected by Section 1797. Accordingly, we sustain the preliminary objection as to Hickok's lack of standing.[11]

■ As to the eighth issue, raising the equal protection challenge to the special treatment of acute care and major burn facilities, the Commissioner contends that the Petitioners did not plead that they provide acute or major burn care. Consequently, the Commissioner asserts that the Petitioners lack standing to challenge the special treatment of facilities that do provide such care.

Section 1797(a) of Act 6 creates two classes of medical services: (1) general medical services and (2) acute care and major burn services provided at acute care or major burn facilities. The charge for the former class of services may not exceed the Medicare reimbursement allowance for such services. The charge for the latter class of services has no such limitation. Petitioners provide general medical services subject to the Medicare reimbursement allowance cap. Petitioners clearly have standing to challenge the disparate treatment they receive under Section 1797(a). Accordingly, the P.O. as to Petitioners' standing to assert count 4 of the Petition is overruled.

■ As to the ninth issue, raising the alleged failure to join indispensable parties, the Commissioner contends that all the automobile insurers in this Commonwealth would be affected by a decision as to Petitioners' challenges to Sec-

11. We note that Petitioners' brief does not contain an argument in opposition to this P.O.

tion 1797 of Act 6. The Commissioner asserts that if Petitioners succeed they will prevent the reduction of costs to automobile insurers, which was a prerequisite to the imposition the mandatory 10% rate reduction of Act 6.

We have already addressed whether insurers are indispensable parties to a constitutional challenge by medical providers to section 1797 in *PMPA*. In that case, we stated that an indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction. *PMPA*, 136 Pa.Commonwealth Ct. at 243, 582 A.2d at 894. In *PMPA*, this court concluded that automobile insurers did not have a sufficient interest in the outcome of the litigation. *PMPA*, 136 Pa.Commonwealth Ct. at 243–244, 582 A.2d at 894. The present case is indistinguishable from *PMPA*. Accordingly, the P.O. raising the claim of failure to join indispensable parties is overruled.

### ORDER

AND NOW, December 5, 1990, preliminary objections 1 and 8 of the Insurance Commissioner, as enumerated in the opinion, are sustained. Preliminary objection 4 is sustained in part and overruled in part, and preliminary objections 2, 3, 5, 6, 7 and 9 are overruled.