64 A.3d 1058

HERD CHIROPRACTIC CLINIC, P.C., Appellee

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided Feb. 20, 2013.

Gary A. Drakas, King of Prussia, Lee Edward Ullman, Reading, Forry Ullman, for State Farm Mutual Automobile Insurance Company.

Robert A. Loch, Pittsburgh, Mark Andrew Martini, Robb Leonard Mulvihill, L.L.P., for Appellant Amicus Curiae, PA Defense Institute.

Mary Ann Kennedy Claraval, Robert F. Claraval, Harrisburg, Claraval & Claraval, for Herd Chiropractic Clinic, P.C.

George Gerasimos Rassias, Schmidt, Kirifides, Pearson, Koutcher & Fridkin, P.C., Media, for Appellee Amicus Curiae, Pennsylvania Association for Justice.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

This appeal concerns the sustainability of an award of attorneys' fees against an insurance company under the peer-review provisions of the Motor Vehicle Financial Responsibility Law.

Section 1797 of the Motor Vehicle Financial Responsibility Law (the "MVFRL"),[1] captioned "[c]ustomary charges for treatment," limits the amount providers may charge for treatment, accommodations, products, or services rendered to patients injured in automobile accidents, where the injury is covered by an automobile insurance policy.[2] 75 Pa.C.S. § 1797(a). The enactment also requires providers to seek remuneration directly from insurers and bars provider recourse against covered patients with regard to the difference between the provider's ordinary charges and those paid by insurers. See id.

1. Act of Feb. 12, 1984, P.L. 26, No. 11 (as amended 75 Pa.C.S. §§ 1701–1799.7) (the "MVFRL").

2. For convenience, we will use the term "treatment," below, to subsume accommodations, products, and services.

In furtherance of the same underlying cost-containment objective, the statute also establishes a process by which insurers may contest their obligation to fund treatment, through implementation of a "peer review plan." *Id.* at § 1797(b)(1). These plans entail contracts between insurance companies and "peer review organizations" ("PROs"), which are approved by the Insurance Department to evaluate the reasonableness and necessity of treatment. *Id.; see also* 31 Pa.Code § 69.55 (delineating the Department's application and approval process for PROs). If, upon a timely challenge, a PRO determines that treatment is unreasonable or unnecessary, the provider may not collect (or must return with interest) any related payments. *See* 75 Pa.C.S. § 1797(b)(7).

In the present case, an individual obtained treatment from Appellee, Herd Chiropractic Clinic, P.C. ("Provider"), for injuries sustained in a motor vehicle accident. The automobile insurer for the patient's family, Appellant State Farm Mutual Automobile Insurance Company ("Insurer"), submitted Provider's invoices to a PRO pursuant to Section 1797(b). The PRO determined that certain chiropractic treatments were not necessary or reasonable, and Insurer refused to pay for such treatment.

Provider then commenced a civil action against Insurer, seeking compensation for unpaid bills in the amount of $1380. Provider also sought treble damages and attorneys' fees, under the theory that these are authorized under Section 1797(b)(4) and (6), which provide as follows:

> **(4) Appeal to court.**—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

\*　　\*　　\*

**(6) Court determination in favor of provider or insured.**—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

75 Pa.C.S. § 1797(b).

On the attorneys' fee question, in relevant part, Insurer defended on the basis that such an award is authorized, under Section 1797, only where insurers fail to invoke the peer-review process as a prerequisite to refusals to pay for otherwise covered treatments. Insurer stressed that Section 1797(b)(6), on its terms, is implicated only where proceedings have occurred under Section 1797(b)(4). *See* 75 Pa.C.S. § 1797(b)(6) (opening with the proviso: "If, pursuant to paragraph (4), . . ."). Since, per its plain language, subsection (b)(4) applies only where an insurer has not invoked the peer-review process, *see id.* at § 1797(b)(4) (establishing providers' entitlement to challenge in the courts an insurer's refusal to pay for treatment, "the reasonableness or necessity of which the insurer has not challenged before a PRO"), it was Insurer's core position that Section 1797(b)(6) simply cannot apply where an insurer has proceeded with peer review. According to Insurer, Section 1797(b)(5)—which does not authorize fee shifting—reflects the appropriate limits on an award by a court on review of a refusal supported by a peer-review determination. *See id.* at § 1797(b)(5) ("If a PRO determines that medical treatment [was] . . . necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.").

The common pleas court, however, rejected this position. Initially, the court observed that Insurance Department regulations authorize provider appeals regardless of whether insurers invoke the peer-review process. *See* 31 Pa.Code § 69.52(m) ("Upon determination of a reconsideration by a PRO, an insurer, provider or insured may appeal the determination to the courts."). While recognizing that those regula-

tions facially contemplate initial recourse to a reconsideration process, *see generally* 75 Pa.C.S. § 1797(b)(2) ("An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination."), the court explained that this Court had refused to treat reconsideration as a necessary prerequisite to appeals under the regulations. *See Terminato v. Pa. Nat'l Ins. Co.*, 538 Pa. 60, 71, 645 A.2d 1287, 1293 (1994).

Based on these considerations, the common pleas court reasoned:

> it appears that through regulation and judicial interpretations of both the statute and the regulations, any party adversely impacted by a peer review decision has recourse in the nature of a challenge before a court under 75 Pa.C.S. § 1797(b)(4). In such a proceeding under that subsection, the statute further provides that, if the court determines that the treatment was medically necessary, the insurer must pay to the provider the outstanding amount, plus interest "as well as the costs of the challenge and all attorneys fees." 75 Pa.C.S. § 1797(b)(6).

> \* \* \*

> ... Had the legislature intended to grant immunity [to insurers that pursue the peer review process] ..., it certainly could have done so, but it did not. We do not believe that the legislature intended that an insurer's use of a peer review process which results, even if unintentionally, in a decision which during a court proceeding is proved to be flawed, to exempt the insurer from the statute's requirement that fees be awarded. [Insurer's] immunity interpretation would, in our opinion, only serve to provide an incentive to all insurers to send all bills to a peer review process in which all semblance of objectivity could be all but ignored, so long as the insurer's conduct is not "wanton", and the provider (or an insured) would be left with the enormous expense of seeking redress in the courts with no possibility of recovering those costs and fees.

*Herd Chiropractic Clinic v. State Farm Mut. Auto. Ins. Co.*, No. 2006–CV–01320–CV, *slip op.* at 6–7, 2009 WL 8482227 (C.P. Dauphin Apr. 30, 2010).

The common pleas court acknowledged Insurer's reliance on *Barnum v. State Farm Mutual Automobile Insurance Company*, 430 Pa.Super. 488, 635 A.2d 155 (1993), which took Insurer's view of Section 1797(b)(6).[3] Nevertheless, the court believed the case had no relevance, since it had been reversed on appeal. *See Barnum v. State Farm Mut. Auto. Ins. Co.*, 539 Pa. 673, 652 A.2d 1319 (1994) (*per curiam*).

Applying this rationale, the common pleas court found an award of attorneys' fees proper and mandatory under Section 1797(b)(6), since it had found, separately, that the treatment rendered by Provider was, in fact, reasonable and necessary to address the patient's injury. Accordingly, and based on Provider's credited evidence concerning the amount and reasonableness of the fees, the court awarded approximately $27,000.[4]

On Insurer's appeal, the Superior Court affirmed on reasoning similar to that of the common pleas court. *See Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 29 A.3d 19 (Pa.Super.2011). According to the intermediate court, "[u]nder section 1797(b)(4), any party adversely impacted by a peer review decision may seek recourse before a court." *Id.* at 22.[5] Like the common pleas court, the interme-

---

**3.** *Barnum* reasoned:

> The peer review process provides a strong incentive for insurance carriers to route disputed claims through this alternate dispute resolution process. Where the insurer denies a claim without first obtaining a PRO evaluation, the claimant may immediately commence a court action. *If the court finds in favor of the claimant, the insurer becomes liable, in addition to the amount of the claim, for counsel fees, costs, and interest at the rate of 12%.* Moreover, if the court finds that the insurer acted wantonly in denying a claim, treble damages may be awarded. *Conversely, if the insurer uses the peer review process, its potential liability is limited to the amount of the claim plus interest.*

> *Barnum*, 430 Pa.Super. at 493, 635 A.2d at 157 (emphasis added).

**4.** The court declined to award treble damages, however.

**5.** The Superior Court, however, neither offered an account for Insurer's observation that Section 1797(b)(4), by its plain terms, simply does not

diate court appeared to be less concerned with an absence of express statutory authorization of fee shifting than with a lack of specific disapproval. *See id.* ("There is nothing in the language of [Section 1797] that specifically precludes attorneys' fees where a peer review decision is challenged and the court finds the treatment reasonable and necessary.").[6] In terms of *Barnum,* the court opined that the decision concerned an insurer's liability for exemplary damages but did not address attorneys' fees. *See id. But see supra* note 3.

■ We allowed the present appeal to resolve the salient question of statutory interpretation, as to which our review is plenary.

■ Presently, Insurer relies upon the default rule in Pennsylvania that litigants bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception. *See Merlino,* 556 Pa. at 425, 728 A.2d at 951 (citing *Chatham Commc'ns, Inc. v. Gen. Press Corp.,* 463 Pa. 292, 300–01, 344 A.2d 837, 842 (1975)). Since, in the circumstances before us, there is no agreement reallocating fees and no claim to any recognized exception other than statutory authorization, Insurer's main argument segues into a review of Section 1797.

In this regard, Insurer maintains that the common pleas and intermediate courts "completely misread" the statute, since subsections 1797(b)(4) and (b)(6), by their plain terms, authorize fee awards only in the absence of peer review. Brief for Insurer at 9, 12.[7] Insurer highlights the Superior

apply when an insurer employs the peer-review process, nor otherwise squared its pronouncement with the actual terms of that subsection.

6. As discussed below, such approach is problematic, because the default rule in Pennsylvania is that attorneys' fees are not available, in the absence of *express* statutory authorization. *See Merlino v. Delaware Cnty.,* 556 Pa. 422, 426, 728 A.2d 949, 951 (1999) (explaining that "a statutory provision must be explicit in order to allow for the recovery of [attorneys' fees]").

7. Insurer and its *amicus,* the Pennsylvania Defense Institute, invoke various principles of statutory interpretation to support a plain-meaning approach to the statute. *See* Brief for Insurer at 15 (citing *Common-*

Court's previous indication that, "when the peer review process has been followed, as it was here, the insurer's potential liability is limited to the amount of the claim plus interest." *Id.* at 9 (citing *Barnum,* 430 Pa.Super. at 493, 635 A.2d at 157).[8] According to Insurer, the prior reviewing courts simply ignored the express "words of limitation" in Sections 1797(b)(4) and (b)(6). *Id.* at 16.

Supplementing its plain language argument, Insurer contends that the Superior Court's holding undermines the cost-containment aim of the MVFRL, as well as the subsidiary goal of encouraging insurers to engage the peer-review process. *See id.* at 10 ("If the Superior Court's decision below is allowed to stand and attorney's fees are to be awarded every time a court overturns a peer review decision, insurers would have absolutely no incentive to first seek a peer review of questionable medical bills."); *accord* Brief for *Amicus* Pa. Defense Inst. at 8 (positing that a "chilling effect on policing unreasonable and unnecessary medical expenses" results from the intermediate court's holding, which "will undoubtedly increase insurance costs for all Pennsylvania insurance consumers").

Insurer also asserts that this Court's *Terminato* decision pertained solely to the question of whether reconsideration of a PRO determination is a prerequisite to judicial review invoked by an insured under the salient Insurance Department regulation. *See Terminato,* 538 Pa. at 63, 645 A.2d at

wealth v. Tate, 572 Pa. 411, 413, 816 A.2d 1097, 1098 (2003) (explaining that "it is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute")); *see also* Brief for *Amicus* Pa. Defense Inst. at 10 (referencing the principle of statutory interpretation providing that no clause, sentence, or word of a statute is to be rendered superfluous, void, or insignificant).

8. *See also* Brief for Insurer at 18 ("[T]he Legislature crafted Section 1797 in such a way as to eliminate an award of attorney's fees and treble damages in exchange for the insurers' submission of disputed treatments to ... a regulated peer assessment."); *accord Green v. State Farm Ins. Co.,* No. 1:CV–09–1668, 2010 WL 330355, at *2 (M.D.Pa. Jan. 20, 2010); Brief for *Amicus* Pa. Defense Inst. at 12–15 (referencing several decisions of the courts of common pleas over the past twenty years, which are consistent with Insurer's position).

1288. Elaborating on this position, Insurer contends as follows:

The effect of the Court's ruling [in *Terminato*] was to expand [that regulation, *i.e.,*] 31 Pa.Code § 69.52(m) to allow court redress without a reconsideration being performed. It is through this regulation, and not through 75 Pa.C.S. § 1797(b)(4), that court action is authorized *where a peer review has been performed.*

Conversely, *if no peer review is performed,* then an appeal to [c]ourt is pursuant to 75 Pa.C.S. § 1797(b)(4).

Reply Brief for Insurer at 5 (emphasis in original). Insurer also stresses that *Terminato* simply did not discuss the range of appropriate damages, including whether and/or when attorneys' fees may be appropriate. Finally, responding to a series of policy arguments advanced by Provider, Insurer counters:

Although [Provider] seeks to attack the [peer review] system as a whole, such arguments are misdirected, not at issue before this Court, and better put to the Legislature.... At its heart, the present case concerns statutory interpretation only. [Provider's] arguments against the system are wholly irrelevant and seek only to cloud the straight-forward issue presented to the Court.

*Id.* at 3.

Provider, on the other hand, asserts that, under Section 1797, "[t]here is no statutory distinction between mandatory damages of the outstanding medical bills amount, interest and all attorney fees." Brief for Provider at 5. It is Provider's position that Section 1797(b)(6) applies on its terms *whenever* a court determines that medical treatment was necessary, regardless of whether or not peer review was pursued by an insurer. *See id.* Furthermore, Provider highlights the Superior Court's observation that Section 1797 does not expressly preclude attorneys' fees for any reason, including cost-containment. Although Provider discusses various of the provisions of Section 1797, its arguments consistently flow into policy statements and explications. *See, e.g., id.* at 7 ("1 Pa.C.S. § 1922(2) states the presumed intent of the Legislature is that

it 'intends the entire statute to be effective and certain.' A reading of 1797 in its entirety indicates a public policy to make health care providers whole."); *see also id.* (contending that fee awards against insurers inure to the public interest).

In one instance in which Provider does focus on the statutory language, it concedes that "[a] first reading of 1797(b)(4) indicates that an appeal to [c]ourt occurs when 'the insurer has not challenged (the medical bills) before a PRO.'" Brief for Provider at 9 (quoting 75 Pa.C.S. § 1797(b)(4)). Provider, however, suggests that this Court rejected such a reading in *Terminato,* as a corollary to its holding that an insured may challenge a peer-review determination *in court,* without a threshold request for reconsideration asserted within the peer-review system. *See id.* at 10 ("Since § 1797(b)(4) and (6) are the only sections of 1797 that pertain to a[c]ourt's determination[,] then the damages in § 1797(b)(6) must apply. It is illogical to reason that *Terminato* stands for the proposition that § 1797 grants a provider the right to appeal a peer review to Common Pleas but does not entitle the provider to the damages expressly stated in the statute following a[c]ourt determination."). Moreover, Provider observes, Insurer does not challenge the award of statutory interest; thus, according to Provider, Insurer should not be permitted to "pick those damages from the statute which it deems applicable and ignore other damages." *Id.*

In terms of Insurer's argument predicated on the cost-containment aims of the MVFRL, Provider references recent expressions from a majority of Justices confirming that the remedial purposes of the statute must also be taken into account. *See, e.g., Williams v. GEICO Gov't Emps. Ins. Co.,* 613 Pa. 113, 136–37, 32 A.3d 1195, 1210 (2011) (Saylor, J., concurring); *id.* at 136–39, 32 A.3d at 1210–11 (Baer, J., concurring); *id.* at 141–42, 32 A.3d at 1213 (Todd, J., concurring, joined by McCaffery, J.). With regard to *Barnum,* Provider notes that the salient passage of the opinion was *dictum,* which Provider believes to be erroneous in any event. To the degree that Insurer relies on Section 1797(b)(5), it is Provider's position that Insurer "misapprehends that

1797(b)(5) acts to grant [Provider] immunity from attorney fees which is the same argument rejected by the Superior and Trial Courts." Brief for Provider at 19.

As noted, Provider advances lengthy policy arguments. Principally, Provider contends that health care providers need "real access" to the courts, because the peer review system is biased in favor of its revenue source, namely, the insurance industry. Brief for Provider at 23.[9] Along these lines, Pro-

9. *See also* Brief for Provider at 32–33 ("State Farm knows that a high percentage of peer reviews will find the care not reasonable and necessary and State Farm has no risk of being sued because State Farm has made it too expensive for the litigant.... The award of attorney fees for prevailing health care providers avoids the injustice of financially foreclosing access to the [c]ourts to health care providers who have given reasonable and necessary care." (footnote omitted)); *id.* at 35 ("State Farm forced Herd Chiropractic's counsel to incur $27,047.50 in attorney fees [relating to a $1,380 claim] for 131.6 hours which the Trial Court held reasonable. Those are the known expenses and do not include the fees associated with appeals to the Superior and Supreme Courts."); *id.* at 36 (attributing to Insurer a "scorched earth litigation strategy"); *id.* at 37 ("Without the assurance that its counsel will be paid under section 1797(b)(6) there is simply no chance that [Provider's professionals] or any other healthcare provider will file an appeal to [c]ourt to be paid for medical bills disallowed under the biased peer review system."); *id.* at 38–39 ("The final insidious reason State Farm spends tens of thousands of dollars to wrongfully refuse payment to health care providers is to reduce the verdict and settlement value of personal injury cases.... This is an extraordinary example of cost containment gone berserk."); *accord* Brief for *Amicus* Pa. Ass'n for Justice at 7 ("This is not 'cost containment' but a windfall to the insurance companies—a stacked deck, slanted terribly in favor of the denying insurance company while leaving the vast majority of medical providers (if not all of them) without reasonable recourse.").

Insurer offers the following response to criticisms of the peer-review system advanced by Provider and its *amicus:*

Without belaboring the point, the Legislature created and enacted the peer review system and expressly endorsed it as a viable tool in evaluating automobile medical claims.... Furthermore, the system is subject to oversight and regulation by the Insurance Department. In particular, an insurer may only contract with peer review organizations that have been certified by the Insurance Department. 75 Pa.C.S. § 1797(b)(1); 31 Pa.Code § 69.55(a). In order to obtain certification by the insurance department, a PRO must submit to the department (1) a "Certificate of Independence" (i.e. that no insurer has any ownership or financial interest in the PRO); (2) a certification that reviews are conducted by medical personnel licensed in the Commonwealth; and (3) a quality assessment of the PRO's review services, including examples of the PRO's review procedures, among

vider highlights the *Terminato* Court's expressed skepticism of the peer-review system. *See, e.g., Terminato,* 538 Pa. at 68, 645 A.2d at 1291 ("The detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer."). According to Provider, reversal of the Superior Court's decision "will have a chilling effect on health care." Brief for Provider at 45. Finally, Provider also offers its own tally concerning the interpretations of Section 1797(b)(6) in the federal and state courts, *see id.* at 39–44; *see, e.g., Miller v. Allstate Fire & Cas. Ins. Co.,* Civil No. 07–260, 2009 WL 577964, at *7 (W.D.Pa. Mar. 5, 2009), and, in any event, admonishes that "a score card argument is not an appropriate rationale to offer this Court." Brief for Provider at 43.

Upon review of the above arguments, we find Insurer's to be correct in material respects. As Insurer notes, this Court has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties, or some other established exception. *Merlino,* 556 Pa. at 425, 728 A.2d at 951. Since no agreement or other (non-statutory) exception has been identified, to be sustainable, the fee award attained by Provider must gain grounding from some express term of Section 1797. *See id.* at 426, 728 A.2d at 951.[10]

Section 1797(b)(4), however, authorizes appeals by providers from insurer refusals to pay for treatment, "the reasonableness or necessity of which the insurer *has not challenged before a PRO.*" 75 Pa.C.S. § 1797(b)(4) (emphasis

others. *See* 31 Pa.Code § 69.55(b). The regulations also set forth certain "standards for operation" for PROs, 31 Pa.Code § 69.53(e), and the Insurance Department monitors the performance of PRO's [sic] through an annual report that each PRO is required to file with the Commissioner. *See* 31 Pa.Code § 69.54.
Reply Brief for Insurer at 2 (footnote omitted).

10. To the degree the common pleas and intermediate courts relied on the absence of any statutory prohibition of fee shifting, their focus was misplaced, since the controlling question under longstanding precedent is whether there is a pertinent, explicit provision for it in Section 1797. *See Merlino,* 556 Pa. at 426, 728 A.2d at 951.

added). Moreover, by its opening proviso, Section 1797(b)(6)—which contains the statute's sole authorization of fee shifting—is expressly tied to subsection (b)(4). *See id.* at § 1797(b)(6) ("If, pursuant to paragraph (4), a court determines ...."). Thus, both subsections, by their explicit terms at least, apply only in the circumstance in which an insurer has not pursued peer review. There is, as Insurer emphasizes, simply no express statutory authorization for fee shifting on provider challenges to peer-review determinations. It is true that the Insurance Department regulation sanctioning such provider appeals serves to alleviate due process concerns arising out of the Legislature's failure to provide for this category of challenges. *See generally Terminato,* 538 Pa. at 72 n. 3, 645 A.2d at 1293 n. 3. The regulation, nonetheless, neither provides for fee shifting nor serves to bootstrap the statutory fee-shifting requirement pertaining to non-peer-reviewed insurer refusals into the peer-review arena.[11]

We acknowledge Provider's concerns with the financial incentives in the peer-review industry and with the fact that litigation costs incurred by providers may discourage legitimate challenges. The fee accruals here—in the amount of $27,000 to vindicate a $1380 claim—present a stark example of the difficulty. Moreover, we appreciate that Section 1797 is neither comprehensive nor a model of clarity, in various respects. Nevertheless, fee shifting raises a host of mixed

---

11. Provider correctly notes that Section 1797(b)(5) pertains to peer-review determinations favorable to providers or insureds and, as such, does not directly serve as a basis for awards of interest where insurers have prevailed in the peer-review process but are unsuccessful in the judicial venue. The governing insurance regulation, nonetheless, couches civil actions ensuing after a peer-review decision as "appeal[s]." 31 Pa.Code § 69.52(m). Moreover, the underlying determination on a provider "appeal" is a PRO's decision that treatment was unnecessary and/or unreasonable, and, if such decision was unjustified, the PRO also necessarily erred in failing to award mandatory interest. *See* 75 Pa.C.S. § 1797(b)(5).

In all events, as to various matters other than fee shifting, there is some latitude for courts to employ principles of statutory construction to give effect to legislative intent where the Assembly has been unclear as to the details of implementation. The Court consistently has been clear, however, that there is no similar license in the fee-shifting arena. *See, e.g., Merlino,* 556 Pa. at 425–26, 728 A.2d at 951.

policy considerations in and of itself, which this Court has found are best left to the General Assembly, in the absence of contractual allocation or some other recognized exception to the general, American rule. The Legislature's failure to adjust Section 1797 over time as imperfections have been revealed by experience, while unfortunate, does not alter the functions ascribed to our respective branches of government. Accordingly, in the absence of a demonstrated constitutional infirmity, courts generally must apply plain terms of statutes as written; they are to confine efforts to effectuate legislative intent—above and beyond the prescriptions of written laws— to ambiguous provisions; and they are to enforce the longstanding responsibility allocated to the policymaking branch to provide for fee shifting, when it is deemed appropriate, through explicit pronouncements.

The dissent's primary position is that due process requires mandatory attorneys' fee awards in the PRO setting, and it suggests that such fee shifting may be justified as an application of principles of statutory construction. *See, e.g.,* Dissenting Opinion, at 459, 64 A.3d at 1071 (indicating that there is "ample room to construe [Section 1797] to avoid this violation of due process").[12] We do not discount that there may be due process concerns with the statute which might be raised and considered via a constitutional challenge to its enforcement.[13] In terms of addressing the question of statutory interpretation with which we are presented in this appeal, however, we observe the dissent's construction contradicts Section 1797's express terms. In this regard, as we have explained, the Legislature has provided for fee awards only in relation to matters pursued under subparagraph (b)(4), *see* 75 Pa.C.S.

---

12. Another linchpin of the dissent is the belief that providers and/or their attorneys do not participate in the PRO process. *See, e.g.,* Dissenting Opinion, at 454–56, 64 A.3d at 1068–69. Salient regulations, however, allow for provider participation. *See* 31 Pa.Code § 69.52(c) ("The PRO shall afford the provider an opportunity to discuss the case with the reviewer and to submit information to the reviewer prior to a final determination."). Additionally, nothing of which we are aware prevents providers from retaining attorneys to represent their interests in such process.

13. No such challenge, however, has been presented in the instant litigation.

§ 1797(b)(6), which applies only to insurer refusals-to-pay for treatment "the reasonableness or necessity of which the insurer *has not challenged* before a PRO," *id.* § 1797(b)(4) (emphasis added).[14] Additionally, contrary to the purport of the dissent, this Court's *Terminato* decision did not effectively channel appeals from PRO decisions through Sections 1797(b)(4) and (b)(6), in derogation of the statute's plain terms. Rather, *Terminato* reflects the far more modest and restrained holding that a statute providing an evaluation process funded by an interested party could not serve to foreclose judicial review on the filing of a civil action in the nature of an appeal from an adverse decision arising from such process. *See Terminato,* 538 Pa. at 71, 645 A.2d at 1292.

While, as we have otherwise recognized, the dissent's policy concerns relative to access to justice are not unfounded, these apply equally to a wide range of small-claims scenarios involving deep-pocket defendants and implicate countervailing policy considerations beyond the scope of the discussion offered by the dissent. In our considered judgment, the present appeal—which is limited to an issue of statutory interpretation— is not an appropriate venue for reconsidering Pennsylvania's longstanding adherence to the American rule.[15]

The order of the Superior Court is reversed, and the matter is remanded for conformance of the judgment with this opinion.

14. The statute itself makes obvious that the General Assembly knows how to provide for fee-shifting where intends it. Accordingly, we decline to infer that the Legislature wished to implement a fee-shifting regime broader than what it has actually prescribed.

15. It should also be noted that the dissent reflects characterizations concerning Insurer's behavior and motivations that are not grounded in any salient findings by the fact-finding tribunal. *See, e.g.,* Dissenting Opinion, at 457–59, 64 A.3d at 1070–71. Furthermore, while such assertions would have relevance in a discretionary fee-shifting regime, we (as well as the common pleas and intermediate courts) have found they have little bearing on the issue of statutory interpretation before us here, *i.e.,* whether Section 1797 provides for across-the-board mandatory attorneys' fee awards in successful provider challenges to PRO determinations.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN and TODD join the opinion.

Justice BAER files a dissenting opinion in which Justice McCAFFERY joins.

Justice BAER, dissenting.

The Majority reverses the award of attorneys' fees to a chiropractic clinic in its action against an automobile insurer because the insurer complied with the peer review process when it denied the clinic's claim for unpaid treatments to the insured. The trial court found the chiropractic treatment was reasonable and necessary for the insured's ongoing pain, a finding the insurance company does not dispute. Because I believe that the due process concerns that animated our decision in *Terminato v. Pa. Nat'l Ins. Co.*, 538 Pa. 60, 645 A.2d 1287 (1994), require the shifting of attorneys' fees where a provider is seeking remuneration for medically necessary treatment, and that the lower courts' interpretation of the statutory provision authorizing attorneys' fees was correct, I respectfully dissent.

In this case, the insured had an insurance contract with State Farm Mutual Automobile Insurance Company (Insurer) to provide first party medical benefits of $10,000, coverage which was more than the minimum required by law and for which the insured paid an increased premium. The insured was injured in a car accident and received treatment from Herd Chiropractic, P.C. (Provider). Relying on a determination by a peer review organization (PRO) that the treatment was not reasonable and necessary, Insurer declined to pay for it. Provider sought recourse in the trial court based on Insurer's failure to pay the bill in breach of the insurance policy. The trial court disagreed with the PRO's conclusions and, conversely, agreed with Provider that the treatment was reasonable and necessary and that Insurer was contractually obligated to pay for it. Consequently, the trial court awarded

Provider the amount of the outstanding bill ($1,380.68), interest, and attorneys' fees in the amount of $27,047.50.

As the Majority notes, the statute at issue in this case, Section 1797 of the Motor Vehicle Financial Responsibility Law (MVRL), 75 Pa.C.S. § 1797, pertains to treatment provided to an injured person for an injury covered by first party medical benefits, and requires the provider to bill the insurer rather than the insured for the treatment. 75 Pa.C.S. § 1797(a). Insurers are required to contract with a peer review organization (PRO), 75 Pa.C.S. § 1797(b)(1); *Terminato*, 645 A.2d at 1288. If the insurer disputes the necessity or reasonableness of treatment of an injured person who is covered by the insurance policy, the insurer may submit the bill to the PRO for evaluation. The provider and insured are not involved in the PRO process; they are not represented by counsel and do not participate. *Terminato*, 645 A.2d at 1291. If the PRO believes that the provider's treatment was medically necessary, the insurer must pay the provider the amount of the outstanding bill in addition to 12% interest. 75 Pa.C.S. § 1797(b)(5). Because there are no attorneys involved, there is no need for the award of attorneys' fees in order to make a provider or insured whole following a PRO decision. The statute provides no avenue for judicial review from a PRO determination.

The statute does provide, however, that where the insurer has not submitted the bill to a PRO but refuses to pay, the provider may seek recourse in the courts:

(4) Appeal to court.—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa.C.S. § 1797(b)(4). When the court finds in favor of the provider, determining that the services rendered were indeed

medically necessary, the statute provides for damages as follows: "the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." 75 Pa.C.S. § 1797(b)(6). Hence, the statutory scheme as enacted by the legislature is logical: because counsel fees are not expended in a PRO review process, they are not recoverable; conversely, because a provider cannot meaningfully seek relief before a court without representation, if it prevails, it is entitled to reimbursement of counsel fees.

However, the statute is flawed in that it does not provide for judicial review of a PRO determination. Thus, medical service providers and an insured challenged the constitutionality of the lack of judicial review pursuant to Section 1797(b) on due process grounds in *Pennsylvania Chiropractic Fed'n v. Foster*, 136 Pa.Cmwlth. 465, 583 A.2d 844 (1990). In preliminary objections, the Insurance Commissioner conceded that the statute did not provide for judicial review of PRO decisions. It argued that there was no right to judicial review, or, alternatively, if due process required judicial review, the court should construe the statute to avoid an unconstitutional result. *Id.*, 583 A.2d at 849–50. The Commonwealth Court concluded "that Commissioner has failed to clearly establish that Petitioners have no right to judicial review of PRO decisions." *Id.*, 583 A.2d at 844.

While *Foster* proceeded to the summary judgment stage of litigation, the Insurance Commissioner promulgated a regulation providing for judicial review of a PRO decision, but only after reconsideration by a PRO had been sought and completed. *See* 31 Pa.Code 69.52(m) ("Upon determination of a reconsideration by a PRO, an insurer, provider or insured may appeal the determination to the courts."). This regulation was most likely an attempt to address the due process concerns raised by the lack of judicial review in the statute. *See Terminato*, 645 A.2d at 1293, n. 3 (noting that it was possible that the regulation was promulgated in response *Foster* and

the due process concerns raised therein). When the Insurance Commissioner filed a motion for summary judgment in *Foster*, following its promulgation of the regulation, the Commonwealth Court granted it. *Pennsylvania Medical Providers Association v. Foster*, 149 Pa.Cmwlth. 203, 613 A.2d 51 (1992). The court held that because the regulation provided for an appeal of a PRO determination to the courts, the due process concerns raised concerning the statute were ameliorated. *Id.*, 613 A.2d at 53, n. 3.

We construed Section 1797(b) in *Terminato*, 645 A.2d 1287, where the issue was whether an insured must seek reconsideration of an adverse PRO determination before seeking judicial review. We held that the doctrine of exhaustion of administrative remedies, which would have militated in favor of requiring a request for reconsideration, had no application to the peer review procedure: "A peer review organization is not an administrative agency, a court of record, or a tribunal authorized to resolve disputes arising out of an automobile insurance policy." *Terminato*, 645 A.2d at 1290. Rather, a PRO is established by the state or local professional society and chosen solely by the insurer before the dispute arises; it does not accept and review conflicting medical evidence proffered by an insured or provider; and only the insurer participates in the process. *Id.* at 1291. Accordingly, we held that a PRO lacks the neutrality required of a fact-finder and that seeking reconsideration from the PRO was not a prerequisite to judicial review:

> A PRO is not a neutral body. While a PRO cannot be owned by or be otherwise affiliated with the insurance company [31 Pa.Code § 69.55], the law provides for the insurance company to select the PRO that will review the claim. The insurance company initially pays the PRO for its services. The insured plays no role in the selection process. Obviously, PROs have a strong financial incentive to appear fair in the eyes of the insurance company. Otherwise, the insurance company will take its business else-

where. On the other hand, the PRO is not concerned with how the insured views the PRO because this will not affect its future business. Consequently, the PRO does not have the characteristics of an independent body for which the Legislature would seek judicial deference.

*Terminato,* 645 A.2d at 1291 (quoting *Harcourt v. General Accident Insurance Company,* 419 Pa.Super. 155, 615 A.2d 71, 78 (1992)). *See also Kuropatwa v. State Farm Ins. Co.,* 554 Pa. 456, 721 A.2d 1067 (1998) (reaffirming that an insured has the right to bring an action against the insurer under Section 1797(b) where peer review was performed). To the extent the regulation required reconsideration prior to judicial review, we held that it should be disregarded. *Terminato,* 645 A.2d at 1293.

The due process concerns that compelled our decision in *Terminato,* the Commonwealth Court's decision in *Foster,* and the Insurance Commissioner's regulation allowing for an appeal from a PRO determination, lead me to dissent from the Majority's holding that Section 1797(b)(6) does not permit attorneys' fees following a court determination where the insurer first sought review by a PRO. Because we have permitted a direct appeal to the trial court under Section 1797(b), *see Terminato,* it follows that such an appeal must be real and meaningful, and not illusory, to comport with due process. As explained below, unless the remedies provision of Section 1797(b)(6) is applied following a court determination, the appellate rights granted by the Insurance Commissioner and verified through *Terminato* will cease to exist for pragmatic purposes, returning the state of the law to where it was before *Foster,* the Insurance Commissioner's regulation at 31 Pa.Code 69.52(m), and *Terminato,* and rendering the statutory scheme unconstitutional under basic due process.

If a medical provider must pursue judicial review to obtain fair treatment of its claim, then the reimbursement of costs and attorney's fees associated therewith are necessary. If providers are unable to recover the costs associated with

obtaining the payments to which they are due, the courts will be closed to the providers and insureds seeking to recover payment of bills which the insurance company has contracted to pay.

The record in this case amply supports this conclusion. Insurers here have engaged in a "scorched earth litigation strategy," *see* Appellees' Brief at 36, where insurance companies demonstrate their willingness to spare no expense to deter providers from pursuing their claims in court, even when the care is reasonable and necessary. As Provider describes, Insurer seeks to intimidate health care providers into either not treating automobile crash victims at all or cutting off their health care prematurely.

In the instant case, Provider's care was judicially determined to be reasonable and necessary. Notwithstanding, they have spent the last ten years, and $27,000 in attorneys' fees, to recover $1,380.68, which Insurer was contractually, statutorily, and factually obligated to pay. Insurer spent over $40,000 defending against its contractual obligation to pay this bill. The motivation is clear: insurance companies know that if they defend every claim to this extent, providers will quickly be forced to relinquish their right to payment for provided services because the cost of litigation will always outweigh the cost of their services. The insurance industry should not be permitted to deprive providers of their rightful day in court through this strategy, which, again, is amply demonstrated on this record. In short, the due process that the Insurance Commissioner and the case law have granted to the provider community will have been abrogated.

There is ample room to construe the statute to avoid this violation of due process. There are two remedies provisions in Section 1797(b): Section 1797(b)(5), which applies when the PRO determines the care was reasonable and necessary and which requires the insurer to pay the outstanding bill plus interest; and Section 1797(b)(6), which applies when the court determines that care was reasonable and necessary and re-

quires the insurer to pay the outstanding bill, interest, costs, and attorneys' fees. Of these two subsections, only Section 1797(b)(6) discusses the participation of a court and counsel. If the court determines the treatment was medically necessary, therefore, the only statutory section regarding court involvement provides that the insurer must pay the outstanding amount, interest, costs, and attorneys' fees. Without the attorneys' fees, the provider will not be made whole and its due process rights will not be accommodated.

On appeal, Insurer recognizes that the statute does not provide for judicial review of PRO determinations. Conceding that judicial review is nevertheless required as a matter of regulation and case law, it argues that the remedies provision that applies following judicial review is Section 1797(b)(5). This section, however, is clearly implicated only where a PRO makes a determination in favor of the insured, and does not account for attorneys' fees, as attorneys are not involved with peer review. Because counsel is not involved, Section 1797(b)(5) does not capture the reality of the costs associated with a court challenge, and is not applicable to a court determination.

Even with the award of attorneys' fees following an adverse court determination, insurers will remain incentivized to utilize the peer review process, therefore accommodating the cost-containment goals articulated in the Majority Opinion. Specifically, Section 1797(b)(4) provides for the award of treble damages for wanton conduct. As the lower courts here found, Insurer's use of the PRO process defeated Provider's claim for treble damages, as it was indicative of a lack of wanton conduct. To avoid or defeat of claim for treble damages, therefore, Insurers would continue to seek peer review of bills for services which they believe they are not contractually obligated to pay.

Consistent with a providers' due process right to seek judicial review, therefore, I believe that the statutory section applicable to a court determination, which expressly permits

attorneys' fees, applies notwithstanding an insurer's use of the peer review process, and, accordingly, I respectfully dissent.

Justice McCAFFERY joins this opinion.