J-A01011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RITTENHOUSE 1603, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EUGENE BARBERA | |
| Appellant | No. 965 EDA 2018 |

Appeal from the Order Entered February 28, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at: December Term, 2014, No. 00080

BEFORE:  OTT, STABILE, AND MCLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:          **FILED APRIL 24, 2019**

Appellant, Eugene Barbera ("Appellant"), appeals from an order denying his post-trial motions and entering judgment in favor of Rittenhouse 1603, LLC ("Appellee") in the amount of $142,624.38.  We affirm.

Appellant owned a condominium at 202-10 Rittenhouse Square in Philadelphia ("the Residence").  Appellant suffered financial hardships, and the Residence went into foreclosure and was sold at sheriff's auction.

Appellant and Lewis Katz ("Lewis"), Appellant's longtime friend and business associate, created a limited liability company (Appellee) that purchased the Residence from a bank.  Appellee's operating agreement made Lewis the managing member.  Lewis contributed $235,000 in return for four Class A voting units; Appellant contributed $1.00 for one Class B non-voting unit.  The operating agreement provided that any dispute between the parties

had to be resolved by Judicial Arbitration and Mediation Services, Inc. ("JAMS").

On December 12, 2013, Appellant assigned his Class B non-voting unit to Lewis. On the same date, Appellee entered into an Occupancy Agreement with Appellant, a separate document from the operating agreement. Under the Occupancy Agreement, Appellant had the right to use and occupy the Residence for a term commencing on December 23, 2013 and continuing until thirty days after written notice of termination from Appellee. The Occupancy Agreement did not require Appellant to pay rent. Instead, he was responsible for paying all utilities, real estate taxes, special assessments, condominium assessments and insurance. In addition, the Occupancy Agreement provided that (1) the relationship was an occupancy at will, and (2) if Appellant defaulted in his payments or violated any terms and conditions of the agreement, he was responsible for paying all resulting costs, including reasonable attorney fees.

On May 31, 2014, Lewis died in an airplane accident. As of that date, Appellant had failed to make any payments due under the Occupancy Agreement. Drew Katz, Lewis's son, replaced Lewis as Appellee's managing member. On August 19, 2014, Appellee sent Appellant a written notice to quit the premises and terminated the Occupancy Agreement. Appellant refused to leave.

Appellee promptly filed an action in the Philadelphia Municipal Court seeking Appellant's eviction from the Residence (but not monetary damages). On October 27, 2014, the Municipal Court entered judgment in favor of Appellee. Appellant timely appealed to the Court of Common Pleas of Philadelphia County (referred to below either as "court of common pleas" or "trial court").

On December 15, 2014, Appellee filed a paragraphed complaint in the court of common pleas that included counts for specific performance of the Occupancy Agreement, ejectment, trespass, breach of the Occupancy Agreement and unjust enrichment. As remedies, Appellee sought possession of the Residence, damages and attorney fees. Subsequently, Appellee withdrew the trespass count.

Appellee also filed a motion for preliminary injunction demanding immediate possession of the property. On February 3, 2015, the trial court denied the motion for preliminary injunction, but at the same time, ordered Appellant to escrow $925.11 per month to cover $566.36 in condominium fees and $358.75 for monthly real estate taxes. Thereafter, Appellant complied with the escrow order by depositing the requisite sum each month with the prothonotary.

On May 28, 2015, at the beginning of trial, Appellant moved to transfer the case to JAMS arbitration pursuant to the operating agreement. The trial court continued trial to address the arbitration motion. On June 19, 2016, the

trial court denied the motion. Appellant appealed to this Court, which affirmed in a memorandum on the ground that the Occupancy Agreement, not the operating agreement, controlled the present dispute. *Rittenhouse 1603, LLC v. Barbera*, 2068 EDA 2015 (Pa. Super., 12/16/16). On August 8, 2017, the Supreme Court denied Appellant's petition for allowance of appeal.

On November 15 and 20, 2017, the court of common pleas presided over a bench trial. On November 20, 2017, the court entered a decision in favor of Appellee on its claims of ejectment, breach of the Occupancy Agreement and unjust enrichment. Pa.R.A.P. 1925 Opinion, 5/22/18, at 1, 5 (finding in favor of Appellee on ejectment claim); *id.* at 4-5, 7 (finding in favor of Appellee for breach of contract and unjust enrichment). The court awarded possession of the Residence to Appellee as well as counsel fees of $75,000.00, costs (including condominium fees and taxes) in the amount of $16,924.33, and rent in the amount of $50,700.00, for a total of $142,624.38.

Appellant filed timely post-trial motions, which the trial court denied on February 27, 2018.[1] On the same date, the court entered judgment in favor of Appellee. Appellant filed a timely appeal to this Court, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Several days after

---

[1] During oral argument on post-trial motions, counsel for Appellant advised that Appellant had vacated the Residence and surrendered his keys.

Appellant's notice of appeal, the trial court ordered the release to Appellee of $28,621.19 in funds escrowed with the prothonotary.[2]

Appellant raises four issues in this appeal:

1. Did the trial court err by awarding additional damages on a claim for unjust enrichment where it had already awarded damages based upon an express, written contract between the parties based upon the same set of facts?

2. Did the trial court err by awarding attorneys' fees where the operative agreement containing the attorneys' fee provision had been terminated prior to the filing of the complaint?

3. Did the trial court err by awarding damages for rent where there was no legally competent testimony or evidence supporting an award of such damages?

4. Did the trial court err by concluding there was a meeting of the minds establishing an agreement between the parties where the agreement was missing pages and the signature pages are from different documents?

Appellant's Brief at 4.

Preliminarily, we address whether the lower courts had subject matter jurisdiction over this action. The question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*.[3] ***Grimm v.***

---

[2] The trial court stated in its Pa.R.A.P. 1925 opinion that it entered this order upon stipulation of counsel. ***Id.*** at 6. Appellant does not challenge the release of the escrowed funds in this appeal.

[3] Shortly after the appeal from the Municipal Court to the court of common pleas, Appellant filed a motion to transfer the case to the Standard Case Track raising the issue of subject matter jurisdiction. Specifically, Appellant argued that the Municipal Court lacked subject matter jurisdiction over this case. ***See*** Appellant's Motion To Transfer Case to Standard Case Track, at ¶¶ 5, 7 (filed

***Grimm***, 149 A.3d 77, 82 (Pa. Super. 2016). Subject matter jurisdiction "relates to the competency of the individual court . . . to determine controversies of the general class to which a particular case belongs." ***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1268 (Pa. Super. 2015). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved . . . ." ***In re Patterson's Estate***, 19 A.2d 165, 166 (Pa. 1941). Moreover, it is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void . . . ." ***Com. ex rel. Howard v. Howard***, 10 A.2d 779, 781 (Pa. Super. 1940). We conclude that both the Municipal Court and the court of common pleas had subject matter jurisdiction over this action.

Appellee commenced this action in the Philadelphia Municipal Court, whose jurisdictional statute provides in relevant part:

> the Philadelphia Municipal Court shall have jurisdiction of the following matters . . .
>
> Matters arising under the act of April 6, 1951 (P.L. 69, No. 20), known as The Landlord and Tenant Act of 1951 (68 P.S. §§ 250.101—250.602). The judges of the Philadelphia Municipal

---

1/14/15). On February 6, 2015, the court of common pleas denied Appellant's motion. Although Appellant has not renewed his subject matter jurisdiction argument on appeal, we choose to raise it *sua sponte* to explain why each court below properly exercised jurisdiction over this case.

Court shall have the power to enter judgments exceeding $5,000 in matters arising under this subsection. Appeals from a judgment of the municipal court under this subsection shall be to the court of common pleas in accordance with local rules of court established by the administrative judge of the trial division. Those rules shall not be inconsistent with [s]tatewide rules of procedure as established by the Supreme Court.

42 Pa.C.S. § 1123(a)(3).

Under the Landlord and Tenant Act, landlords may seek the removal of tenants from leasehold premises based on (1) termination of the term of the lease, (2) breach of its conditions, or (3) the tenant's failure to pay rent. 68 Pa.C.S.A. §§ 250.501, 250.503. A lease

may be defined as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in question for exchange of consideration, usu. rent." Black's Law Dictionary 907 (8th ed.2004). While the parties need not use the term "lease" in describing their agreement, a lease may be found where it is "the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period." **Morrisville Shopping Center, Inc. v. Sun Ray Drug Co.**, [] 112 A.2d 183, 186 ([Pa.] 1955).

**Forest Glen Condominium Association v. Forest Green Common Limited Partnership**, 900 A.2d 859, 865 (Pa. Super. 2006). Although the Occupancy Agreement did not call for Appellee to pay "rent," it constituted a "lease" because it was a contract that permitted Appellant to use the Residence in exchange for "consideration," namely payment of utilities, real estate taxes, special assessments, condominium assessments and insurance. **Id.** Therefore, the Municipal Court had jurisdiction over Appellee's complaint seeking Appellant's eviction under the Landlord and Tenant Act.

Next, the court of common pleas possessed subject matter jurisdiction over Appellant's appeal of the Municipal Court judgment against him. The legislature authorizes aggrieved parties to appeal a Municipal Court landlord-tenant judgment to the court of common pleas in accordance with "local rules of court established by the administrative judge of the trial division." 42 Pa.C.S.A. § 1123(a)(3). Here, following Appellant's appeal to the court of common pleas, Appellee filed a multi-count complaint alleging, *inter alia,* ejectment, breach of the Occupancy Agreement and unjust enrichment. Although Appellee did not allege these claims in the Municipal Court, Appellee had the right to allege them in the appeal to the court of common pleas. Philadelphia Local Rule *1001 provides that appeals from Municipal Court landlord-tenant judgments "shall be in accordance . . . with the Rules of Civil Procedure that would be applicable if the action being appealed was initially commenced in the Court of Common Pleas." Philadelphia Local Rule *1001(f)(2)(ii). In turn, the statewide Rules of Civil Procedure provide that "the plaintiff may state in the complaint more than one cause of action cognizable in a civil action against the same defendant. Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." Pa.R.Civ.P. 1020(a). These authorities permitted Appellee to prosecute actions in the court of common pleas that it did not raise in the Municipal Court.

Turning to the arguments raised in this appeal, Appellant first contends that because the trial court awarded damages for items covered in the Occupancy Agreement (condominium fees and taxes), it could not also award damages under the doctrine of unjust enrichment for items not covered in the Occupancy Agreement (several years of rent that accrued after Appellee sent the notice to quit). Appellant argues that Appellee cannot seek damages under the unjust enrichment doctrine where an express written contract governs the parties' dealings.

We need not address whether an award for unjust enrichment is improper, because we can uphold this award for a different reason. *See* **Zehner v. Zehner**, 195 A.3d 574, 581 n.12 (Pa. Super. 2018) (appellate court can affirm trial court's ruling on any basis). Besides finding for Appellee on the basis of unjust enrichment and breach of the Occupancy Agreement, the trial court found for Appellee on its claim for ejectment. Notably, Appellee requested damages in the prayer for relief on its ejectment claim. Damages are available in an ejectment action against "holdover" tenants for the time period in which the tenant wrongfully refuses to vacate the premises. **Amoco Oil Co. v. Burns**, 408 A.2d 521, 524 (Pa. Super. 1979) (citing **Doyle v. Goldman**, 180 A.2d 51 (Pa. 1962)). Appellant does not challenge the trial court's decision on ejectment in his appellate brief. Thus, the record supports an award of rent for the holdover period to Appellee as damages in Appellee's ejectment action. We note that this award does not duplicate the award to

Appellee on its claim for breach of the Occupancy Agreement, since the award on the ejectment claim was for rent while the award for breach of the Occupancy Agreement was for condominium fees and taxes.

In his next argument, Appellant objects to the award of attorney fees against him on the ground that the "[Occupancy Agreement] containing the attorneys' fee provision had been terminated prior to the filing of the complaint." Appellant's Brief at 4. We disagree.[4] Litigants bear responsibility for their own costs and attorney's fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception. *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062 (Pa. 2013). In this case, the Occupancy Agreement includes a fee-shifting provision requiring Appellant to pay "reasonable attorneys' fees" to Appellee "relat[ing] to [Appellee's] enforcement of the terms and conditions of this . . . Agreement." The same agreement includes a tenancy-at-will provision permitting Appellee to terminate the lease at any time via written notice. Appellant breached the Occupancy Agreement by failing to pay condominium fees and taxes and violating the tenancy-at-will provision by refusing to vacate the Residence for

---

[4] It does not escape our attention that this argument contradicts Appellant's previous argument contesting the unjust enrichment award. Appellant objected to the unjust enrichment award on the ground that there was an enforceable written agreement between the parties. In this argument, however, Appellant claims that attorney fees are improper because the written agreement is **not** enforceable.

several years after Appellee sent him a written notice to quit. The ensuing litigation in the Municipal Court and court of common pleas constitutes Appellee's "enforcement" of the agreement, thus entitling Appellee to attorney fees under the fee-shifting provision in the Occupancy Agreement.

Appellant insists that Appellant cannot obtain attorney fees because Appellee did not initiate suit before terminating the Occupancy Agreement. We agree with Appellee that the Occupancy Agreement does not require a pre-termination lawsuit as the predicate for attorney fees. The agreement simply states that Appellee can obtain attorney fees for "enforcing the terms and conditions" of the agreement—precisely what Appellee did here.

Next, Appellant argues that Appellee's claim for rent fails because Appellee failed to identify the appropriate amount of monthly rent with competent evidence. We disagree.

Appellee identified the amount of monthly rent through testimony of Nancy Zemlak, chief financial officer of the Katz Family Office. The trial court overruled Appellant's objections to Zemlak's competence to testify on this subject. We review challenges to the trial court's evidentiary rulings for an abuse of discretion. **U.S. Bank, N.A. v. Pautenis**, 118 A.3d 386, 391–92 (Pa. Super. 2015). "[D]ecisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to

constitute reversible error, it must have been harmful or prejudicial to the complaining party." ***Id.***

The owner of property may testify regarding the property's value. "[A]n owner may not be familiar with the general prices of property in the neighborhood, nor may he possess all the qualifications that would be required of others who testify as to value. Nevertheless, because he is an owner with general knowledge of his property, he is a competent witness." ***Westinghouse Air Brake Co. v. Pittsburgh***, 176 A. 13, 15 (Pa. 1934); ***Welsh v. City of Phila.***, 16 Phila. 130, 142 (Pa. Ct. Com. Pl. 1987) (citations omitted) ("Pennsylvania cases hold that a property owner may testify about the fair market value of her property, and need not be held to the standard of an appraiser. So long as an owner has personal knowledge of the property and an understanding as to how it could be used, the testimony is admissible"). Further, "values of land may be shown by persons generally acquainted with the property whose knowledge and experience qualify them to form a judgment as to value." ***Westinghouse Air Brake Co.***, 176 A. at 15. In addition, where, as here, a corporate body owns the property, it "[is] certainly in a position through its officers[] to know the value of its properties" and present testimony regarding that value. ***Graham Farm Land Co. v. Commonwealth***, 70 A.2d 219, 221 (Pa. 1950) (admitting tax return evidencing property valuation completed by corporation's president); ***Faith United Presbyterian Church v. Redevelopment Auth.***, 298 A.2d 614, 616

(Pa. Cmwlth. 1972) (high ranking officer of church qualified as "owner" who could testify as to value of property in eminent domain proceedings).

Zemlak, chief financial officer of the Katz Family Office, handles all business dealings of Lewis's estate, including Appellee's business affairs. Zemlak testified extensively concerning her background and her management of real estate assets of Lewis's estate. She also testified about her personal knowledge of the Residence and her review of comparable properties. Based on this knowledge, she testified that the fair market value of the Residence was $500,000.00, and its fair rental value was $1,300.00 per month. The trial court acted within its discretion by determining that (1) Zemlak's connection with Appellee, the owner of the Residence, and (2) her knowledge and experience, qualified her to testify as to the Residence's fair market value and fair rental value. *Cf. Graham Farm Land Co.*, 70 A.2d at 221; *Faith United Presbyterian Church*, 298 A.2d at 616.

Finally, Appellant argues that the Occupancy Agreement was unenforceable because he did not see or understand the Occupancy Agreement before signing it. Appellee claimed on the stand that he did not receive a copy of the agreement or know what he was signing, but that he simply followed Lewis's direction to sign it. The trial court, as fact finder, was not required to accept this self-serving testimony as true, and its verdict demonstrates that it did not find Appellant credible. Appellant's failure to read the contract "is an unavailing excuse or defense and cannot justify an

avoidance, modification or nullification of the contract or any provision thereof." ***Olson Estate***, 291 A.2d 95, 98 (Pa. 1972). There is no evidence that Appellant lacked command of the English language, signed the agreement under duress, or was defrauded into signing the agreement. Accordingly, this argument fails.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/19